### No. 9987
### Orleans

---

## W. A. McBRIDE, Appellant, v. N. O. PUBLIC SERVICE, INC.

---

(February 15, 1926, Opinion and Decree.)

---

*(Syllabus by the Court.)*

1. **Louisiana Digest—Evidence—Par. 349, 351.**
When the manner in which an accident is alleged to have taken place is improbable it will take but a slight preponderance of evidence to justify the conclusion that the accident did not occur in the manner alleged.

Appeal from Civil District Court, Hon. Mark M. Boatner, Judge.

This is a damage suit for injury alleged to have been suffered through the fault of defendant's employees.

There was judgment for defendant and plaintiff appealed.

Judgment affirmed.

Frank S. Normann, of New Orleans, attorney for plaintiff, appellant.

Benj. W. Kernan, of New Orleans, attorney for defendant, appellee.

CLAIBORNE, J. This is a damage suit for injury alleged to have been suffered through the fault of defendant's employees.

Plaintiff alleged that at some time between 12 and 1 o'clock a. m. of August 12, 1923, he was riding as a passenger on a Dauphine street car of defendant company and was seated in the rear of the car; when the car reached midway between Andry and Flood streets, on Chartres street, the plaintiff rang one bell to have the car stop at Flood street, where plaintiff desired to get off; that the conductor heard his signal and gave the motorman one bell to stop the car at Flood street; that at the same time plaintiff arose from his seat and walked to the rear platform where he remained standing with his hands holding the brass handle of the folding doors; that when the front part of the car had reached the uptown side of the intersection of Flood and Chartres streets, plaintiff placed "his feet on the step of the car" and held the grab iron with his left hand, without objection from the conductor; that when the rear of the car was about midway in the intersection of Flood and Chartres streets, petitioner realized that it was not possible to stop the car at the usual and customary stopping place and asked the conductor: "How come the car was not going to stop?"; that the conductor was in the act of writing out a report; that the conductor reached for the leather cord and gave two bells to the motorman "to go ahead" just as he was about to pass the usual stopping place; the car which was in motion gave a severe jolt and jerk, which petitioner alleged was

caused by the motorman feeding the motors; that as a result of the jolt and jerk "petitioner was thrown violently forward from and off of the step of said car with the result that your petitioner suffered a crushing injury to his left foot, completely macerating the member, by reason of coming in contact with the wheel and steel rail of the defendant's car and track; that as a result of the injury it became necessary to amputate his foot above the ankle; that the accident was caused by the negligence of the defendants' employees to which plaintiff did not contribute. Plaintiff claims $10,904.80 for the injury and pain and loss of earnings.

The defendant denied all the allegations of the petition and further answering averred: That some time after 2 o'clock a. m. on August 12, 1923, a colored man whose name was given as William McBride, alighted from a Dauphine car at the corner of Chartres and Flood streets, and as he was apparently intoxicated the conductor, before starting, assured himself that the passenger was safely on the sidewalk; that thereafter William McBride was injured at a point below Flood street; that if injured as alleged in the petition, the injuries were caused by plaintiff's own negligence in failing to take the proper care required of a man in his condition.

There was judgment for the defendant and plaintiff has appealed.

The plaintiff supports the allegations of his petition by his own testimony. He is corroborated, as to his fall from the platform, by Benjamin Davis, another colored man like himself, driver of a night wagon at the slaughter house, and Z. H. Rieulfy, another colored man, solicitor for the People's Life Insurance Co. The behavior of this witness upon the stand was so peculiar that the judge asked him if he had been drinking and he admitted that

he had had "one drink" in the morning.

Defendant's theory of the case is entirely different. It is this:

Henry Moss testified that on the morning of August 12 he was acting as motorman on the Dauphine car of defendant company, No. 713; that he left the station at the corner of Canal and Wells streets at 1:15 a. m.; that the next car after him was at 1:45, and the third at 2:15; that the conductor on his car was Joseph Meyers; that he made a long stop at Flood street because his conductor was leading a man out of the car; that he led him under Mumme's shed, and then he proceeded on his run; that the man the conductor was leading out was the plaintiff, McBride; that McBride was under the influence of liquor.

Joseph Meyers was conductor on the same car, No. 713, on the morning of August 12, with Henry Moss as motorman; he has known the plaintiff when he lived down on Flood street since the witness was a boy in short pants; he picked up the plaintiff, McBride, as a passenger on his 1:15 trip at the corner of Canal and Rampart streets; he was intoxicated; he asked Moss to put him off at Flood street if he went to sleep; he fell asleep; witness picked him off his seat and brought him to the side of the Mumme grocery and told him to go home; he then returned to his car and continued on his trip; after he got off his car in the morning at 4:45 he learned that plaintiff got his foot crushed.

McBride admits that he had taken "two drinks".

William Jones was the motorman of the car No. 719; he left the corner of Canal and Wells streets at 1:45 a. m., with Dominick as conductor; that would put him at the corner of Flood and Chartres streets at about 2:15 a. m.; the last time he stopped, before the accident, was at the

corner of Flood and Chartres streets; he stopped there to discharge a passenger, a dead stop; after he had "hit" about a hundred and some odd feet in the center of the block he heard a jolt from the front end of the car; he had seen nothing because it was very dark in the center of the block; and the lights threw a shadow in front of the car; he heard a moaning and stopped as quickly as possible; he got off the car and saw a man sitting holding his leg up; the crew of the car ahead were Meyer and Nuss, 30 minutes ahead.

Albert J. Dominick was the conductor on the car No. 719 on the morning of August 12; Jones was the motorman; they left the corner of Canal and Wells at 1:45 a. m.; they reached Flood street at 2:15; they made a stop on that street to discharge Schule who was a passenger from the rear platform; no one was thrown off of the car; the next stop was after the accident, about 120 feet from Flood street; the jolt of the car attracted his attention; the motorman stopped the car without a bell; he called upon the main office for the ambulance; he used the phone at Schule's home, 615 Flood street; Howell and Broussard, going out fishing, and another gentleman were in the car; the front truck ran over plaintiff's foot.

These four employees of defendant company are corroborated by the following witnesses:

1st. Fred Schule lives on Flood street; the fourth house from the corner of Chartres; he was the man who got off of the car when the accident happened; he got off from the back end; the car stopped to let him off; there was no one else on the platform waiting to get out; nor any colored man holding the handle bar; the motorman and conductor were Jones and Dominick; after he got out of the car he went to the left towards the woods; it was about 2 o'clock; he heard the car jump as if it had run over something; he turned back, he met the conductor who wanted to use a telephone, and he brought him to his house; he went back to the car with the conductor and saw the man with his leg cut; he was lying about 125 feet from Flood street; Mr. Howell was there.

2nd. Andre L. Broussard, office manager for McDermott Surgical Instrument Co., testified that he was standing on the back platform of the Dauphine car August 12, a Sunday; it was between 1 and 2 o'clock; he was on the platform because he was going out fishing and he had a fishing basket and some poles; he does not know the number of the car but recognizes Jones and Dominick as the motorman and conductor; the car stopped on Flood street and he saw a man get off; after they got to the middle of the block he heard something as though the wheels had gone over something; he saw the man who had been hurt; it was McBride whom he recognizes; when the car stopped on Flood street, McBride was not on the car.

3rd. Charles D. Howell was working in August, 1923, in the Alden Cotton Mills; on the morning of the 12th he and his wife were coming home from a dance between half-past one and two o'clock; they were on the street car that had the accident; the motorman's name was Jones, a big fat fellow; the car came to a dead stop on Flood street to let out a passenger; then the car gave two jerks or bumps; he rushed to the front and saw a colored fellow had his leg smashed; the front wheel caught him.

4th. Mrs. Charles D. Howell corroborates her husband. She was not swayed or moved off of her seat by the bump.

5th. Miss Elmo Delorde is working

for the Capital City Auto Company, and in August, 1923, had been employed by the Southern Cabinet Works; she was living at No. 308 Delery street; on the morning of August 12, 1923, she was in the street car which caused the accident; she knew the crew of the car; the motorman was Bill Jones and the conductor Dominick; she recognized them as they were brought into court; the car came to a stop on Flood street and Mr. Schule stepped off; Mr. Broussard was on the car too; it was the last stop before the accident; the accident happened between 1:30 and 2:30; Mr. and Mrs. Howell were in the car with her; she did not see McBride in the car; she saw Mr. 'Schule get off of the car.

George E. Murphy, claim agent of the defendant company, testified that he saw the plaintiff on August 13 at the Charity Hospital; that the plaintiff told him that he boarded a Dauphine car at the corner of Canal and Rampart streets; that he paid the conductor his fare; that he recognized the conductor whom he knew by the name of Joe; that he had had a few drinks before getting on the car but was not drunk; he asked the conductor to put him off at Flood street; that he went inside of the car and fell asleep; when the car reached Flood street it came to a full stop and the conductor took him out of his seat and helped him out of the car and took him to Mumme's grocery; that after he had gotten off of the car and as he was crossing the track he was struck and knocked down and his foot was cut off by the car.

Many of the witnesses above named testify that a big tall colored man was on this car No. 719 and created a dis-turbance, and their description fits the witness, Benjamin Davis.

It is not possible to believe that four employees of the defendant company and five disinterested and reputable passengers could have been procured to testify falsely to the facts stated by the nine witnesses above mentioned. They were all separated.

It is true that six witnesses for the plaintiff, Davis, Riculfi, Martha Servat, Olga Cartwright, Bertucci and plaintiff's wife, testify that Meyers was the conductor of car 719. But all but Davis and Riculfi came upon the scene after the accident, and had not known Meyers previously. They saw the persons in the uncertain light of the night, and testified one year after the accident, and it is possible that they were in error. The judge who saw and heard these witnesses refused to believe them as against defendant's witnesses.

But be that as it may, the testimony of defendant's nine witnesses pitted against the six of plaintiff's is sufficient to destroy plaintiff's theory of the accident, which is improbable, if not impossible.

The defendant has produced a photograph of the side of the car No. 719, which is the same as car 713, supported by the testimony of a witness.

The bottom step is 17 inches from the ground; the distance from the front end of the rear step to the rear wheel where it touches the rail is 37 inches, or three feet one inch; the wheel is recessed under the car; from the outside flange of the wheel to the outside line of the car is nineteen inches; the car overhangs the wheel nineteen inches; the arched truck frame upon which rest the two side wheels is four and a half inches from the top of

the rail and ten inches from the point of contact of the wheels with the rail.

The plaintiff alleged that as the car gave a jerk, caused by the feeding of the motor, he was thrown violently forward and off the step, with the result that his left foot was caught by the rear wheel and was crushed. The natural result of a sudden forward movement of a car upon a passenger standing on the car looking forward is to throw the passenger backward. A reaction may take place by which the passenger in exerting himself to regain his equilibrium may lose his balance and fall. But while plaintiff was upon the steps, and the car was moving forward, that fall could have been upon the side of the steps or behind them, but not ahead of them. Plaintiff's feet upon the steps were at least three feet one inch from the nearest point of junction of the car wheel with the rail and many more inches from the front of the wheel. By no acrobatic feat, had he attempted, could he have swung his feet forward from the handbars so as to have brought them in front of the wheel and under the truck frame only four and a half inches from the rail. Had he succeeded, his foot would have been instantly crushed, kept in position by friction and the weight of his body. But the testimony is that the accident occurred at a distance not less than 75 feet from the corner of Flood Street, thus confirming the theory that he was not crushed by a car from which he fell.

We have given this record more than ordinary attention, and we have come to the conclusion that the testimony does not justify us in concluding that plaintiff was thrown off of defendant's car. The District Judge was of the same opinion, and his judgment is therefore affirmed.