Plaintiff, a Negro man thirty-one years of age, sustained physical injuries on the night of Saturday, October 2d 1943, just north of Natchitoches, Louisiana. Alleging that these injuries resulted from a fall from a passenger train of the defendant railroad company on which he was a passenger for hire, and that the said fall was caused by negligence of the employees of the defendant company, plaintiff brought this suit praying for judgment for $31,000. He alleges that at the time he was a member of the Armed Forces of the United States and that he was stationed at Camp Claiborne near Alexandria, Louisiana; that he had obtained a short pass or leave in order that he might visit in Shreveport over the weekend; that he purchased a round trip ticket from Alexandria to Shreveport and that he boarded the train at Alexandria, leaving there shortly after 8 o'clock at night; that there being no available seats, he had been forced to stand during the journey from Alexandria to Natchitoches, and that as the said train was leaving Natchitoches, he thought that he might be able to find a seat in the passenger coach ahead of that in which he had been riding and attempted to pass from one coach to the other; that while he was in the vestibule, the train gave a sudden lurch which caused him to lose his balance and fall; that the trap door on that part of the floor of the vestibule nearest him had been left open through carelessness of employees of the company, and that when he lost his balance as a result of the sudden lurch he fell through the open door of the vestibule to the ground and sustained injuries.
Defendant denies all of the allegations of plaintiff's petition, and after a trial, there was judgment in the District Court dismissing the suit, and plaintiff has appealed.
The sole issue in the case is one of fact. Did plaintiff fall from the train or did he sustain his injuries as a result of intentionally trying to jump from the train, or was he a passenger at all, having been hurt in some entirely different way?
It is shown clearly that although the injuries were sustained on the night of October 2d 1943, neither a report or them nor a claim resulting from them was presented to the defendant company until nearly three years later.
As a result of this long delay the railroad company, of course, found it very difficult to investigate the accident, if there was an accident, and bases its defense almost entirely on pointing to alleged inconsistencies and contradictions in the various statements *Page 252 
given by plaintiff and to other circumstantial evidence tending to contradict the statements of plaintiff and also points to his previous bad character and reputation, showing a rather bad earlier criminal record.
[1] Counsel for plaintiff insists that the District Judge dismissed the suit because of an erroneous belief that Article 2277 of the Civil Code has some application. That article governs the proof which is required in suits on contracts or agreements above $500, requiring proof by at least one credible witness and other corroborative circumstances. Counsel for plaintiff argues that that article has no application to a suit of this kind and that, therefore, if the judge below dismissed the suit because plaintiff's claim was based solely on his own evidence, he must have been in error. We find nothing in the record to indicate that the District Judge was of the opinion that Article 2277 of the Civil Code has any application to such a suit as this.
The next contention of plaintiff, which we shall consider, is that since there is no positive evidence, except that of plaintiff, himself, that the injuries were sustained as he says they were, we should accept this testimony and should not permit it to be overcome by the effect of circumstantial evidence and by proof that plaintiff, himself, had been in criminal difficulties on earlier occasions. In support of his argument on this point, counsel quotes the following from 23 C.J., Verbo Evidence, Sec. 1791, page 47; 32 C.J.S., Evidence, § 1038; "Uncontradicted evidence should ordinarily be taken as true, and cannot be wholly discredited or disregarded if not opposed to probabilities or arbitrarily rejected, even though the witnesses are parties or interested; and where the evidence tends to establish a fact which it is within the power and to the interest of the opposing party to disprove, if false, his failure to attempt to disprove it strengthens the probative force of the evidence tending to prove it."
If the unsupported statement of a plaintiff in this kind of case is to be accepted, regardless of the circumstantial evidence and regardless of whether or not plaintiff's character is such as to entitle him to be believed, then in any case in which a plaintiff is injured where there is no positive evidence to contradict his story, recovery must be allowed regardless of all suspicious surrounding circumstances.
Wigmore, in his work on Evidence, 2d Ed., Vol. 4, Sec. 2034, p. 309, says: "* * * the mere assertion of any witness does not of itself need to be believed, even though he is unimpeached in any manner; because to require such belief would be to give a quantitive and impersonal measure to testimony."
[2] We have no doubt that in a case such as this, it is necessary, more than in a case where there are witnesses on both sides, to scrutinize carefully the statement of the party who makes the claim and to also study in detail the circumstances which tend to disprove his statements.
The plaintiff himself gave statements concerning the occurrence on three different occasions. In the first place, he made a statement to the claim agent of the defendant company; in the second place, his testimony was taken de bene esse, and in the third place, his evidence was given on the witness stand when the case was tried. While in the main and on the important details his three statements seem to coincide, in minor details, which ordinarily might be unimportant, there are contradictions which throw suspicion on the truth of his more important statements.
But there are other circumstances which, to an even greater extent, tend to discredit him. In the first place, it is shown that on four earlier occasions he had been in difficulties with the law. In these encounters with the law, plaintiff had come out with more or less success to himself, but we cannot but believe that the facts related in connection with them, both by him and by other witnesses, tend to show him to be not entirely trustworthy.
In addition, however, to these aspersions which have been cast upon his character, we find other circumstances which throw grave doubt upon the truthfulness of his recital as a whole. Among these circumstances let us recite the following:
He stated that during the preceding day and evening he had imbibed nothing whatever in the shape of intoxicating liquors *Page 253 
and yet the two men, who discovered him after he had crawled to, or had been placed in, the power house near Natchitoches, say that unquestionably they could plainly detect whiskey on his breath. Mr. Dranguet, am employee in the power house, said: "Yes, sir, I smelled it. I am sure of that." And Mr. Thaxton, the other employee, was asked: "Did you notice if Franklin had been drinking?" And he answered: "You could smell whiskey or liquor I would say."
Franklin claimed that he had fallen off the train at a point somewhere near this power plant and lapsed into unconsciousness several times and had finally crawled from the point at which he had fallen to the power plant. The record shows that this power plant is four or five hundred feet from the tracks at its nearest point, and yet these two witnesses say that Franklin's clothes showed no evidence of having been dragged across the ground or of his having crawled and that the next morning, by daylight, they went outside to look at the ground and could find no evidence of his having crawled along the ground.
Another circumstance that we find interesting is that plaintiff, for five, six or seven months, had been a railroad employee, being employed as a dining-car waiter, and was undoubtedly familiar with railroad trains. He was not an ordinary country farm laborer, and it is hard to believe that he fell from a train as he says he did.
The record shows that the trap door could not have been opened unless the main door was also first opened, and he does not claim that the other door was open. He says that the lurching of the train threw him sideways to his right, and yet it is shown that the track was perfectly straight at that point and there was nothing to cause the car to sway from one side to the other. If the lurch was either forward or backward as a result of the train putting on speed or slowing up, he would have been thrown backward in the one case or forward in the other, but not sideways.
In the case of McBride v. New Orleans Public Service, Inc., 3 La. App. 474, we held: "When the manner in which an accident is alleged to have taken place is improbable, it will take but a slight preponderance of evidence to justify the conclusion that the accident did not occur in the manner alleged."
In the question of whether the trap door could have been open the only evidence besides the testimony of plaintiff himself is to be found in the statement of the train conductor. This conductor, at the time of the trial, had retired from the service, having had forty-four years in the employ of the company. He said that when the train was about to leave Natchitoches, he took his position at the rear of the first passenger coach and he took the tickets from all passengers who boarded the train, and that if he had not handled the train in that manner, passengers would have boarded the train through other coaches and he would never have been able to get their tickets, so that he made certain that the other doors were closed and, therefore, he was certain that the door through which plaintiff says he fell could not have been open. Of course, this witness had no personal recollection of this particular occasion, but he had a remarkably complete record kept in a book in which all entries had been made by him, and he was able to give considerable details concerning that particular trip of this train. He said that he was certain that the door through which plaintiff says he fell could not have been left open because he always "religiously" looked to see that no other doors were open so that the passengers must board through that door at which he took his position.
Defendant's theory of the case is that plaintiff, who, during his sojourn in the Army, had been stationed at Natchitoches for a considerable time, had suddenly realized, just as he was about to leave Natchitoches, that he might get off there and enjoy himself in that district of Natchitoches known as the "Hill", which seems to have been made up of colored saloons and pleasure resorts, and that he either did not get back on the train at all, or attempted to leave the train as it passed through that section of the town. Of course, there is no direct evidence to corroborate this theory. It is suggested too that possibly he had not fallen from the train at all, but had left the train at Natchitoches, had gone into this district referred to as the "Hill", had there *Page 254 
gotten into difficulties which resulted in his injuries, and had been carried to and left in the power plant where he was later discovered. Of course, here again there is no positive evidence.
A rather remarkable circumstance is the fact that plaintiff did not actually present any claim to the railroad until nearly three years after the alleged occurrence. He attempts to explain this by saying that he was in the Army and that he had reported the matter to the Judge Advocate and to the Red Cross and to various lawyers, but his stories concerning these various reports to these various agencies are very confusing and self-contradictory. It seems certain that if he had reported such an accident to such an agency as the Red Cross, the information concerning the claim would have reached the defendant railroad company long before it actually did so.
We see no reason to go into further details concerning the circumstances which throw grave suspicion on the story of plaintiff. The District Judge found those suspicious circumstances sufficient to discredit his story.
[3] Our conclusion, after reading the record, is that the District Judge obviously was not in error in reaching this conclusion.
The judgment appealed from is affirmed at the cost of appellant.
Affirmed.