McBRIDE, Judge.
Plaintiff, alleging that he intended to become a passenger on one of the ferryboats operated by defendant across the Mississippi River, and that while ascending the series of steps approaching the ferry landing in Gretna, he fell and as a result of the fall suffered a fracture of the right *9 hip, claims of defendant the sum of $23,-015.45 as damages, alleging that the accident was caused solely through defendant’s negligence:
“(a) In failing to maintain said steps in proper repair;
“(b) In failing to provide proper lighting on said steps;
“(c) In failing to provide a handrail on said steps;
“(d) In allowing said steps to become in such dire state of repairs as to leave large cracks and crevices therein; and
“(e) In failing to afford safe ingress and egress to petitioner.”
The defendant, after denying the allegations of the petition, averred that the steps were at the time of the alleged accident well and properly lighted; the answer charges in the alternative that plaintiff was guilty of contributory negligence.
Plaintiff has prosecuted this appeal from the judgment dismissing his suit.
The trial judge found that plaintiff did meet with an accident on the premises of defendant on the date and time alleged, namely, November 26, 1950, at about 8:50 p. m.' This finding was predicated on plaintiff’s own testimony (no other eyewitness testified) and on the testimony of the driver of an ambulance operated by the Police Jury of Jefferson Parish, who at 11:45 p. m. found plaintiff on the steps and placed, him in the ambulance and took him to the Charity Hospital. However, the judge concluded that the defendant had fulfilled the duty imposed upon it by law of furnishing “a reasonably safe or a safe place for these pedestrians to ascend the step for the purpose of getting on the ferry,” and that plaintiff’s fall could not be attributed to any defect existing in the steps.
The steps upon which plaintiff fell were of cement and were constructed at least twenty-five years ago. From the photographs in evidence, they, are not of the conventional type, for it appears that the top of each step is deep enough to occasion a person taking more than a full stride before progressing from one level to ,the next.
Ladmirault says that on the evening of the accident he intended to cross the river to New Orleans. He says he started up the steps leading to the ferryhouse, and upon reaching the third level “I twisted my foot, I stepped in a crack,” and then fell striking his right hip on the coping bordering the steps. The crack was described by plaintiff as being two to three inches wide, one to one and one-half inches deep, and running up one or two steps. He was positive that the fall took place on the third of the series of steps at 8:50 p. m. Upon being questioned as to how he fixed the time of the accident, plaintiff stated that he had passed some ladies on the second step who were on their way to a Keno house and were hurrying to get to the nine o’clock “gold roll.”
Plaintiff further testified that there were a number of taxicab, drivers present at the bottom of the ramp, and following his fall, these taxicab drivers came to his assistance. Strange as it is, the Police Jury ambulance was not summoned until 11:30 p. m., as Cotton, its driver, testified that his records reveal that the call to come .to the ferry-house was received,at that time. Ladmi-rault was carried away by the .ambulance fifteen or twenty minutes later.
The petition alleged, and from the witness stand plaintiff at all times insisted, that the crack in the concrete which caused him to fall existed in the third level of the steps. The trial judge mentioned this' in his reasons for judgment, and' observed that the only crack in the steps is on the' fourth level and
“ * * * in connection with that defect in the step, that I feel that the plaintiff’s appreciation of the defect, is greater than the actual defect is. That is, .the plaintiff estimated • that: *10 the crack was 3 or 4 inches wide. Now you can look at the photograph and you can see that the crack is not that wide. Captain Bisso testified that it was a half-inch or three-quarters of an inch high and approximately 3 feet long. He states it is more or less an elevation; that the concrete on one side has moved down and on the other side it has gone up with the result that you have this depression or elevation of approximately a half-inch or three-quarters of an inch. * * * ”
We have made careful examination of the photographs and the evidence, and we are in accord with the quoted statement of the trial judge. The crack appears to be a narrow one, and it seems to us that it would have been impossible for plaintiff’s foot to have been caught or wedged in the crack as he claims. It appears that the concrete on one side of the narrow crack is elevated slightly above the concrete on the other side, but plaintiff does not assert that this condition occasioned the accident. In fact he has not even alluded to it.
It is true that a carrier of passengers for hire is to be held to the legal duty of furnishing a safe means of passage to and from its stations for passengers and those intending to become passengers, but it has not been shown in this case that the defendant has failed in this duty. On the contrary, the evidence shows that the steps upon which plaintiff says he fell have served the defendant for at least twenty-five years, and from testimony received without objection, it appears that the defendant has never received a report of any other accident occurring on the concrete steps notwithstanding that approximately 120,000 passengers negotiate the steps each month.
Besides what has been said, we deem it proper to mention that in a case such as this, where the plaintiff’s testimony is unsupported' and there is no positive evidence to contradict his story, it becomes necessary for the court to scrutinize carefully the testimony and to study in detail circumstances which might tend to disprove plaintiff’s statements. Franklin v. Texas & P. R. Co., La.App., 35 So.2d 251. There are present in the instant case certain circumstances which in themselves would throw grave suspicion on what plaintiff had to say. First, it seems incredible to us that the taxicab drivers who came to plaintiff’s assistance would allow him to remain on the concrete steps in a seriously injured condition for nearly three hours before summoning an ambulance. Second, plaintiff produced none of these taxicab drivers as witnesses. Third, defendant was never notified by plaintiff or by anyone in his behalf that such an accident as plaintiff described had occurred, it being conceded that the first notification came to defendant when it was served with citation in the present suit, which was filed eleven an one-half months after the accident is alleged to have occurred. Fourth, plaintiff alleged that defendant’s premises were inadequately lighted but the evidence, even that given by plaintiff, shows that the said allegation is false. Fifth, concerning plaintiff’s claim for the loss of earnings in the amount of $3,000. The petition alleges that plaintiff was a taxicab driver earning $60 per week and that he has been unable to pursue such calling as a result of his injuries. In direct examination, he testified to the truth of the allegation, but on cross-examination his attention was directed to the Charity Hospital report introduced in evidence in which he was reported as having told the doctor taking his history that he had been unemployed for the four years preceding the date of the accident. Lad-mirault on two later occasions testified that he was not employed as a cab driver at the time of the accident. He later said he was “on welfare,” and was “fooling around the bookie joint.” At one point the judge asked Ladmirault this question:
“What I want to know, and I am very frank to tell you that your testimony is unsatisfactory as far as I am concerned with reference to your employment and the welfare — but I want *11 to know, as judge and also as a citizen, were you getting welfare money at the same time you were making sixty dollars a week?”
For the reasons assigned, the judgment appealed from will be affirmed.
Affirmed.