McBride, judge.
Plaintiff sustained physical injuries about 7:30 on the morning of January 14, 1955, as a result of slipping and falling in the bathtub in which he was taking a shower in Room 404 of the Jung Hotel, which is owned and operated by defendant Canal Street Hotel Company, Inc., at which hotel plaintiff was a registered guest at the time. He sued the operator of the hotel and its liability insurer for $29,000.56 in damages, alleging that while he was in the process of taking his shower bath in tepid water, the water emitting from the shower pipe suddenly and unexpectedly became extremely hot, and he would have been severely burned had he not endeavored to extricate himself from the Sow of hot water, and in the course of such endeavor, he slipped and fell in the tub causing his left knee to strike the side thereof, twisting his leg. He attributes several acts of negligence to the Jung Hotel, the pith of which is that it failed to furnish proper and safe appliances for the use of its tenants and failed to act reasonably and prudently in operating its hostelry.
*305 The hotel operator admits plaintiff was a guest, but it denied all of the other allegations of the petition, and, in the alternative, pleaded that plaintiff was guilty of contributory negligence.
After a trial there was judgment in the Civil District Court dismissing the suit, and plaintiff’s appeal therefrom is now before us.
The sole issue in the case is strictly one of fact. Did plaintiff fall when he attempted to remove his person from a sudden and unexpected flow of hot water from the shower facilities?
The shower involved is of the diverter type. One regulates the temperature of the water by means of hot and cold water faucets located at the head of the bathtub, and when the temperature is satisfactory, he lifts a button which diverts the flow of water from the tub to the shower pipe overhead. Plaintiff states that when he commenced talcing his shower bath the temperature of the water was comfortable, but all of a sudden, and without any intervention on his part, hot water began to flow from the shower head causing him to experience extreme pain, and in endeavoring to jump away from the water flow, he fell in the tub sustaining painful and severe injuries which ultimately required surgery. Plaintiff states that when the gush of hot water occurred, he was standing on his left leg with his right leg raised for the purpose of applying soap to it. His roommate named Sam Fletcher, in testimony taken out of court, stated he saw plaintiff enter the bathroom at the time alleged and later heard the water running as though someone was taking a shower, and that for some reason then unknown to him, certain exclamations emanated from plaintiff. When plaintiff returned from the bathroom, Fletcher says he asked him what had happened, whereupon plaintiff told him that the water from the shower head had turned hot all of a sudden, and as he jumped away to avoid the hot water, he fell in the tub.
Plaintiff stated further that when he left the bathroom, he did not think he had suffered anything but minor injuries; however, he later, on the same day, telephoned the switchboard operator of the hotel and asked to be connected with the manager’s office, and after being connected, he talked to someone to whom he made report of the accident. Plaintiff was unable to give the name of the person with whom he spoke, and could only say that he reported all details of the accident to the party with whom he was connected.
The manager of the Jung Hotel testified there is no record of any complaint having been made about the plumbing facilities or water temperature in Room 404 on that day. All the manager could find in the hotel records is a report made out in the handwriting of a former secretary which shows that at 3:00 p. m. on the day in question a Mr. A. M. Pritchard, occupying Room 404, while taking a shower, slipped in the tub wrenching his knee, and that he “didn’t want a doctor.” The secretary is no longer connected with the Jung Hotel.
The manager went on to state that whenever a guest makes complaint about a defect in any of the facilities, such complaint is referred to the hotel’s engineer, whose duty it is to remedy any situation complained of. Necessary repairs are made as quickly as possible, as it is the policy of the hotel to keep its rooms ready for use.
The engineer appeared as a witness and testified that the shower facilities in Room 404 are of Crane manufacture. He maintains a record showing the temperature of the water at all times; and according to him, there had been no complaint of the shower, water temperature, or of the plumbing facilities in Room 404 during the period of ten days before the accident and the ten days after. The engineer points out that the hotel water system facilities provide a thermostatic control of the water used in the rooms within a range of from ten’ to fifteen per cent. The water is heated at a central location, after which it is piped throughout the building. The witness emphatically stated the only thing that could *306 possibly bring; about such a sudden increase in the temperature of the water as described by plaintiff would be a failure of the New Orleans water pressure, and there had been no such failure, insofar as the hotel is concerned, for the last five years. He produced in court a temperature chart for January 14, 1955, on which the mechanically-made graph shows the temperature of the water at all times during' that day. The pertinent temperature readings are as follows:
6:30 A.M. - 152°
7:00 A.M. - 142°
8:00 A.M. - 136°
9:00 A.M. - 128°
10:00 A.M. - 140°
12:00 A.M. - 142°
The witness explained that at 6:30 a. m. the temperature of the water is at its maximum in order to take care of the morning requirements of the guests. As persons begin to arise and make use of water throughout the hotel, the temperature .drops until about 9:00 a. m. when the maximum or peak demand has become satisfied, and thereafter the temperature begins to rise again.
The trial judge did not favor us with written reasons, but in view of his judgment dismissing the suit, he necessarily must have formulated the opinion that there had been no such flow of hot water as plaintiff claims, and that the accident did not happen in the manner related by plaintiff. There is justification for such a finding, and certainly it cannot be said that there is manifest error therein. In view of the trial judge’s conclusions, we would be loath to disturb the judgment.
It is true there is no direct contradiction of the verity of plaintiff’s testimony. It is also true that because a plaintiff’s testimony stands alone it should not be rejected for that reason. We agree that in certain cases a plaintiff’s testimony alone may be sufficient to make out a case in tort. But in a case where the testimony is unsupported and there is no positive evidence to contradict his story, it becomes necessary for the court to scrutinize the testimony carefully and analyze in detail any circumstances which might tend to disprove plaintiff’s statements. Franklin v. Texas & P. R. Co., La.App., 35 So.2d 251; Ladmirault v. Bisso Ferry Co., Inc., La.App., 72 So.2d 8; Tomasik v. Shreveport Railways Company, Inc., La.App., 98 So.2d 554; Davilla v. Ochsner Clinic, La. App., 103 So.2d 285.
The trial judge was evidently not satisfied that plaintiff in making his report to the manager’s office mentioned anything about the sudden flow of hot water or of any defective facilities and neither are we. We believe that if plaintiff had made a report of the hot water incident, then under the system of management prevailing in the hotel, some steps certainly would have been taken by the engineer to remedy the situation, and the fact that no such steps were taken leads us to believe that nothing was said by plaintiff about the sudden and unexpected flowing of scalding water and this tends to discredit his story.
We think, too, that the testimony of the engineer regarding the nature and method of operating the water system should be accorded considerable weight and it would negative plaintiff’s assertion as to the cause of the accident.
Neither are we satisfied with the testimony of Fletcher, the roommate. It seems to us, if plaintiff had told Fletcher that the hot water caused his fall, that Fletcher would have gone into the bathroom in order to see for himself what had happened. We think curiosity would have prompted him to test the water himself.
Taking into account all circumstances of the case, we see no reason whatever for saying that the trial judge erred.
Therefore, the judgment appealed from is affirmed.
Affirmed.