AYRES, Judge.
Plaintiff Mrs. Katherine Pinchera, having allegedly sustained accidental injuries within the course and scope of her employment with the defendant, The Great Atlantic & Pacific Tea Company, Inc., and her husband, George D. Pinchera, instituted this action for a declaratory judgment to determine whether Mrs. Pinchera’s remedy was through an action for workmen’s compensation or in tort with an appropriate award in accordance with the court’s determination of the nature of defendant’s liability.
The court, after trial, discounted the fact that plaintiff Mrs. Pinchera experienced an accident while employed by defendant, but concluded that the workmen’s compensation statute was without application to the facts and then found no fault upon the *795 part of defendant or its employees that would warrant a conclusion of defendant’s liability in a tort action. Accordingly, plaintiffs’ demands were not only rejected but plaintiff Mrs. Pinchera was condemned to refund to defendant compensation paid in the sum of $2,030. From the judgment accordingly rendered and signed, plaintiffs appealed. Defendant has answered the appeal and prays that the item of refund be increased to $4,530 so as to include an amount of $2,500 expended by it on plaintiffs’ behalf for hospital and medical expenses incurred in the treatment of Mrs. Pinchera’s alleged injuries. For this refund, judgment is sought against both plaintiffs in solido.
First of primary concern is the question whether plaintiffs established Mrs. Pinch-era was involved in an accident while employed by defendant. Defendant contends that the proof offered falls far short of discharging this burden under a well-established rule that in personal injury cases where there is no positive proof of an accident, except the testimony of one of the interested parties, it is necessary for the court to carefully scrutinize the testimony and to study in detail the circumstances which might tend to disprove it. Crier v. Marquette Casualty Company, 159 So.2d 26 (La.App., 4th Cir. 1963-writ refused); Davilla v. Ochsner Clinic, 103 So.2d 285 (La.App., Orl.1958); Ladmirault v. Bisso Ferry Co., 72 So.2d 8 (La.App., Orl.1954); Franklin v. Texas & P. R. Co., 35 So.2d 251 (La.App., Orl.1948).
In thus considering Mrs. Pinchera’s testimony it is urged that it be evaluated under the rule there must be nothing to impeach or discredit her testimony and that for recovery her account of the alleged accident must be supported by the surrounding facts and circumstances. Carter v. Casualty Reciprocal Exchange, 163 So.2d 855 (La.App., 2d Cir. 1964); Franklin v. Texas & P. R. Co., supra. In this connection, defendant points out that the trial judge, in d written opinion, stated:
“ * * * . there are many inconsistencies in Mrs. Pinchera’s testimony and certainly the facts and circumstances do not tend to support her' account of how the accident occurred.”
■ Resolution of this question is dependent upon the facts which the record discloses, a review of which is necessary for that purpose.
According to Mrs. Pinchera, the accident in which she claimed to have been injured occurred while she was inside a storage area in a back storeroom of defendant’s store. This area, sometimes referred to as a locker, constructed beneath a staircase, was 13'3i/3" in overall length, with a width of 3'9" and a height of 7'8" for a distance of 7T1". From that point, the staircase formed the ceiling of the locker and slanted downward to its minimum height of 3'3". Entrance was through a door 2' in width located 2'4" from the rear of the locker. Against the inner back wall of the locker was a unit of storage shelves F5" in depth with a length of 8'4". The aisle between the shelves and the front wall had a width of 2'.
Mrs. Pinchera’s version of the accident was that she had placed a dolly near the door of the locker upon which she intended to place merchandise. She went inside to get a box of candy described as a sealed cardboard box estimated to be about 12-14" wide, 9" deep, and 18-22" long. After entering the door, she turned to her left and walked toward the end of the tier of shelves, whereupon, while leaning forward, she lifted the box from the lowest shelf and started to turn to her left in order to get into position to back toward the door. In so doing, the box struck the wall causing some loose boards to fall and strike her back.
The discrepancies and inconsistencies in her testimony, to which defendant refers and with which the trial court was obviously concerned, have reference to minor details related by her on the occasions of her report of the accident, in giving a his *796 tory of the occurrence to her physicians, and in testifying in court. These minor discrepancies are not, in our opinion, entitled to the importance emphasized. Taking certain isolated statements from the whole of her version of the accident, an impression may be gained she claimed to have been injured by the fall of the boards.
However, from Mrs. Pinchera’s statements, when taken as a whole, the conclusion logically follows that she sustained an injury or injuries to her back by the strain in lifting the box of merchandise while she was in a stooped position. This is consistent with her statements concerning the history of the accident as related to physicians who examined and treated her. Slight but immaterial variations in statements made over a period of two years, concerning the manner of the occurrence of the accident, are insufficient to brand plaintiff as unworthy of belief.
Nor does it appear unreasonable or important that plaintiff’s injury at the time did not appear to be of consequence. Pain, however, was experienced in her back, which steadily increased during the night. On the following morning, on reporting the accident to the store manager, she was advised to see a doctor. Dr. R. McIntyre Bridges was immediately consulted. Through an examination on that occasion, muscle spasm in her lower back with restricted motion was noted. A tentative diagnosis was acute lumbosacral sprain. These findings are consistent with plaintiff’s claim she sustained accidental injuries on the preceding day.
The rights and remedies of an employee injured while performing duties in the course and scope of his employment, where the statute is applicable, are governed exclusively by the Workmen’s Compensation Act (LSA-R.S. 23:1021 et seq., 23:1032). Thus, the application vel non of the statute to the facts of this case must be first determined.
The defendant owns and operates in the city of Minden a retail grocery store described as a supermarket which is equipped with the latest mechanical and electrical appliances. A retail grocery, however, is not listed in the compensation statute as a hazardous business (LSA-R.S. 23:1035). Nor has it been held per se to be hazardous. Boggs v. Great Atlantic & Pacific Tea Company, 125 So.2d 419 (La.App., 3d Cir. 1960); Le Blanc v. National Food Stores of Louisiana, Inc., 118 So.2d 500 (La.App., 1st Cir. 1960); Talbot v. Trinity Universal Insurance Company, 99 So.2d 811 (La.App., 1st Cir. 1957 — writ refused).
Though defendant’s operation is not one of those listed in the statute as hazardous, the statute provides that its operation of apparatus charged with electrical current brings it within the purview of the statute (LSA-R.S. 23:1035). It is therefore of importance to determine whether defendant maintained such apparatus or appliances and whether the plaintiff was charged with their operation as a substantial portion of her duties.
Plaintiff was manager of the coffee, dairy, and candy departments of the store. As such, she had in use an electric coffee grinder and an electric package sealer. From her position in the store and the nature of her duties, it can only be concluded that a substantial portion of her work entailed the grinding and packaging of coffee and the sealing of those packages by use of the electric sealer. These were in addition to her duties in waiting on customers, which included the custom grinding of coffee for individual customers.
Defendant cites and relies upon the decision in Boggs v. Great Atlantic & Pacific Tea Company, supra, which concerned the use by the employee of cash registers and a coffee grinder. The use of these, however, was not a customary part of the employee’s duties. The substantial portion of his duties related to price marking the merchandise. It was only on occasions and in emergency situations that the employee assisted at the cash register or in the grinding of coffee.
*797 The Boggs case is therefore distinguished from the instant case in that here the grinding and packaging of coffee and the sealing of the packages constituted a substantial part of the duties which Mrs. Pinchera regularly and daily performed through the use and operation of the electric grinder and package sealer. In the Boggs case the employee was shown to have acted as checker and, in so doing, used the cash register and the coffee grinder at most only once or twice a week and sometimes not for a month at a time. Thus, the instant case is not only distinguishable from the Boggs case but from the following: Brownfield v. Southern Amusement Co., 196 La. 73, 74, 198 So. 656 (1940); Fontenot v. Myers, 93 So.2d 245 (La.App., 1st Cir. 1957); Richardson v. American Employers’ Insurance Co., 31 So.2d 527 (La.App., 1st Cir. 1947); Brown v. Toler, 19 So.2d 680 (La.App., 1st Cir. 1944).
The rule was first announced in Byas v. Hotel Bentley, Inc., 157 La. 1030, 103 So. 303 (1924), that where an employee was required to discharge both hazardous and nonhazardous duties it was immaterial that his injury or death occurred while he was engaged in nonhazardous work because there was only one employment and one compensation.
Following the rule announced in the Byas case, compensation was awarded to the manager of a grocery store who assisted in the meat department and operated a grinder, although at the time of the accident he was not engaged in hazardous work, upon the basis that plaintiff was, as a daily matter, required to actually operate the grinding machinery. Talbot v. Trinity Universal Insurance Company, supra.
To the same effect is the holding in Richmond v. Weiss & Golding, Inc., 124 So.2d 601 (La.App., 3d Cir. 1960), where a clerical worker in an office of a department store, whose employment was primarily that of a stenographer but in-eluded that of a relief switchboard operator, was awarded compensation for injuries sustained while lifting office records. Her employment was said to be hazardous within contemplation of the compensation statute because, as a regular and daily duty, she was required to operate a switchboard. There it was held that an employment is within the contemplation of the compensation statute where the employee is regularly exposed to or is frequently brought in contact with the hazardous features of a business, even though he is primarily engaged in nonhazardous features of the business. See also: Luce v. New Hotel Monteleone, Inc., 234 La. 1075, 102 So.2d 461 (1958): Byas v. Hotel Bentley, Inc., supra; Talbot v. Trinity Universal Insurance Company, supra; Fontenot v. Myers, supra.
For the aforesaid reasons, we conclude that plaintiff’s employment, together with her right to recover compensation, comes within the provisions of the workmen’s compensation statute. Action for workmen’s compensation being plaintiff’s exclusive remedy, no basis exists for a claim in tort.
The nature, extent, and probable duration of Mrs. Pinchera’s disability are matters which must now be resolved on the basis of the record. Dr. Bridges’ tentative diagnosis, upon examining plaintiff when she reported to his office Saturday morning, January 18, 1964, was that she had sustained an acute lumbosacral sprain. Diathermy treatments were administered Saturday and Sunday with no improvement noted. Plaintiff was admitted to the Minden Sanitarium January 21, 1964, where she remained until February 29, 1964. During the first four days of that period she was treated with traction, analgesics, and muscle relaxants without results. She was then referred to Dr. T. M. Oxford, an orthopedic surgeon, who, upon examination, concurred in the tentative diagnosis of Dr. Bridges and recommended that his treatment be continued. Again, *798 no improvement was noted; hence, on February 17, 1964, she was returned to Dr. Oxford for an evaluation. On that occasion she was fitted with a lumbosacral support, with a recommendation that the treatment prescribed by Dr. Bridges be continued.
Diathermy treatments at intervals of two or three days were continued after plaintiff left the hospital until April 13, 1964. Upon examination on that date, aided by x-rays, Dr. Oxford reached the conclusion that plaintiff had probably sustained a ruptured disc. This was confirmed by a myelogram of April 17, 1964. A herniated disc was disclosed at the L-4 interspace which was removed through surgery on April 20, 1964. Mrs. Pinchera remained in the hospital until discharged May 4, 1964. She continued under treatment by Dr. Oxford until August 27, 1965.
Subsequent to the accident Mrs. Pin-chera experienced blackouts following dizzy spells. On occasions she lost control of herself and fell. Because of this condition, plaintiff was referred to Dr. Philip Bonn, a neurosurgeon, who, in June, 1964, caused an electroencephalogram to be made. This was negative, not showing any brain disturbance. The doctor’s diagnosis was that the blackouts were attributable to Mrs. Pinchera’s pain or physical condition.
A fall in November, 1964, resulted in an injury to plaintiff’s right shoulder which produced pain and limitation of motion in that area. Another fall in August, 1965, resulted in cellulitis in her right hip, requiring hospitalization and surgery.
On no occasion did Dr. Oxford find Mrs. Pinchera’s condition improved. She constantly suffered a significant degree of pain, and had muscle spasm as well as limitation of motion in her back. For more than a year while under the treatment of Dr. Oxford, she was regularly administered muscle relaxants and drugs for sleep and rest. The doctor’s final diagnosis of plaintiff’s disability was that it was total and permanent. This was predicated upon a finding of continual pain, suffering, and limitation of motion in her back.
In November, 1965, Dr. Oxford testified with reference to the surgery in April, 1964. The result was characterized as unsuccessful because, in his opinion, in the healing process excessive amounts of scar tissue had formed, producing pressure on the nerves at the L-^t interspace.
At the instance of defendant, plaintiff was examined in September, 1965, by Dr. Bennett H. Young, an orthopedist, who expressed the opinion that Mrs. Pinchera’s operation was a success and that her complaints of pain could not be justified by any objective findings. He also expressed an opinion that plaintiff was able to pursue the character of work she had performed prior to the accident and was no longer disabled.
Following the trial in November, 1964, as disclosed on reopening of the case, Mrs. Pinchera returned to Dr. Oxford December 31, 1965, because of continued pain and a deteriorated condition. An examination revealed muscle spasm and a significant restriction of motion in her back. She was again referred to Dr. Bonn who saw her in his office January 7, 1966. Upon examination Dr. Bonn noted bilateral lumbar muscle spasm accompanied by involvement of the sciatic nerve, which again suggested a disc involvement. Another myelogram was recommended which was performed January 10, 1966, A defect was disclosed at the L-4 interspace, indicative of a nerve-root involvement requiring surgical procedure which was performed on the following day by Dr. Bonn. The operation revealed, with reference to the L-4 interspace, a portion of disc material protruding and pressing upon the annulus. Also revealed was scar tissue exerting pressure upon the nerve roots as was a bony substance attached to the fifth lumbar vertebra at the L-4 interspace. Each of these or a combination of two or more of them was suffi *799 cient, in Dr. Bonn’s opinion, to produce the pain and disability with which he found Mrs. Pinchera suffering. An examination of the L-5 interspace made at the time revealed the disc as soft and deteriorated. This disc was removed as were the disc material and bony substance.
Plaintiff’s disabling condition persisted until the date of trial. There was no satisfactory proof to indicate when she would ever be able to return to and perform the duties of her former employment or do work of a similar character. The record, in our opinion, discloses, as Dr. Oxford so frequently stated in his testimony, that plaintiff is totally and permanently disabled.
No issue exists as to the rate of compensation to which Mrs. Pinchera is entitled, nor as to the maximum hospital and medical expenses which defendant must bear. The defendant, having paid hospital and medical expenses in the maximum sum of $2,500, is entitled to credit therefor.
The court is required, in workmen’s compensation cases, to fix counsel and expert-witness fees in the judgment and to tax the latter as costs. Counsel’s fees are therefore fixed in accordance with the provisions of the statute and the expert-witness fees in the sum of $100 for each of those testifying in court, $50 each for those testifying by deposition, and $150 each for those testifying both in court and by deposition.
For the reasons assigned, the judgment appealed is annulled, avoided, reversed, and set aside; and
It is now Ordered, Adjudged, and Decreed there be judgment herein in favor of plaintiff Mrs. Katherine Pinchera and against the defendant, The Great Atlantic & Pacific Tea Company, Inc., for the full sum and weekly compensation of $35 for the period of her disability, not, however, to exceed 400 weeks, with 5% per annum interest on each of said installments from its maturity until paid, less compensation, previously paid in the sum of $2,030.
It is further Ordered, Adjudged, and Decreed that plaintiffs’ counsel’s fees be, and they are hereby, fixed in the sum of 20% of the first $5,000 and 10% of the remainder which may be recovered under this judgment.
It is further Ordered, Adjudged, and Decreed that the defendant pay all costs including the fees of Drs. T. M. Oxford, $150; R. McIntyre Bridges, $100; Arthur A. Herold, Jr., $50; Philip Bonn, $50;. and the cost of this appeal.
Reversed and rendered.