CULPEPPER, Judge.
Plaintiff was awarded workmen’s compensation benefits for total and permanent disability. Defendant appealed.
The issue is whether plaintiff, an employee in defendant’s grocery store, was regularly exposed to hazardous features of the business.
The facts are that plaintiff had been employed for about five months as the manager of the coffee and dairy products department of defendant’s grocery store in Natchitoches, Louisiana. Her duties included ordering the coffee and dairy products and placing this merchandise in the proper display areas. The dairy products were stored in a large walk-in cooler. About 40% of her time was used in moving the dairy products from this cooler to the display areas.
Plaintiff used an electrically heated sealing iron, very similar to an ordinary *454 household pressing iron, to seal plastic containers of dairy products, such as butter, cheese, etc. She testified she did not use this iron every day, but about 10% of her time was spent in using this piece of equipment.
About 50% of plaintiff’s time was consumed with the use of a coffee grinder. This machine operates on' 220 volts of electricity and is a “double hopper mill”, with a separate grinding mechanism on each side. From the pictures in the record it appears to be about two feet square and eight or ten inches in depth. The entire machine is enclosed by metal shields.
Plaintiff testified that when a customer ordered a pound of coffee she selected a prepackaged bag of the type desired and poured the coffee beans into a hopper on top of the grinder. She then set a dial on the side of the machine to grind the coffee coarse, medium or fine in accordance with the customer’s request. Plaintiff then turned the lever to start the machine and it took about ten seconds to grind a pound of coffee. The ground coffee came out of the front of the machine into a paper bag which was then twisted at the top and handed to the customer. Plaintiff ground about 1,000 pounds of coffee each week.
About once every three weeks plaintiff was required to clean the coffee grinder. Using a screw driver, she removed a square metal cover on the side of the machine. She then removed the graduated burrs from the drive shaft and wiped them off. Coffee dust was brushed from the exposed parts with a brush or rag. After the burrs were cleaned they were replaced on the drive shaft and the metal cover was snapped back in place on the side of the machine.
Each side of the machine was cleaned separately. If a customer wanted coffee while plaintiff was cleaning one side, she would grind the coffee in the other side.
The accident occurred when plaintiff leaned over and picked up a case of cheese. She sustained an injury to her back which required hospitalization and eventually necessitated surgery. Defendant concedes the accident and plaintiff’s disability.
Several applicable principles of law are well established in our jurisprudence. The operation of a retail grocery store is not listed as a hazardous business in LSA-R.S. 23:1035 and is not hazardous per se. Boggs v. Great Atlantic & Pacific Tea Co., 125 So.2d 419 (La.App. 3rd Cir. 1960); Pinchera v. Great Atlantic & Pacific Tea Co., 206 So.2d 793 (La. App.2d Cir. 1968). Although a business is not hazardous per se, an employee is nevertheless covered by the workmen’s compensation act where he is regularly exposed to or frequently brought in contact with a hazardous feature of the business. Luce v. New Hotel Monteleone, 234 La. 1075, 102 So.2d 461 (1958); Mercer v. Sears Roebuck & Co., 155 So.2d 112, 122 (La.App.3rd Cir. 1963). Such an employee is covered regardless of whether the injury resulted from hazardous or nonhazardous features of his employment. Byas v. Hotel Bentley, 157 La. 1030, 103 So. 303; Richmond v. Weiss & Goldring, Inc., 124 So.2d 601 (La.App.3rd Cir. 1960).
 At the outset, we will state that counsel for plaintiff places little reliance on the fact that she frequently entered the walk-in cooler where dairy products were stored. Although this cooler was operated with electric compressors and other refrigerating equipment, the duties which plaintiff performed in or around this cold storage room were not hazardous. Claiborne v. Smith, 2 So.2d 714 (La.App.); Boggs v. Great Atlantic & Pacific Tea Co., supra. The same is true of the sealing iron. Harrington v. Franklin’s Stores Corporation of New Iberia, 55 So.2d 647 (La.App.).
Essentially, the question is whether the operation and cleaning of the coffee grinding machine rendered plaintiff’s employment hazardous. Similar questions have *455 plagued the courts for many years. Although LSA-R.S. 23:1035 classifies as a hazardous occupation “The * * * operation * * * of * * * apparatus charged with electrical current.” there are several cases which hold that this alone is not sufficient to render the employment hazardous. For instance, in Claiborne v. Smith, 2 So.2d 714 (La.App.) a cook in a cafeteria who regularly came in contact with an electric motor and compressor on the outside of a refrigerator was held not to be engaged in a hazardous feature of the business. In Harrington v. Franklin’s Stores Corporation of New Iberia, supra, the court held that the use of an electric steam iron and a vacuum cleaner was not hazardous. Honeycutt v. Sears Roebuck & Co., 146 So.2d 860 (La.App.3rd Cir. 1962) held that a saleslady in a department store who regularly operated an electric cash register and relaced tapes in it was not engaged in hazardous features of that business. In the recent case of Fontenot v. J. Weingarten, Inc., 232 So.2d 143 (La. App.3rd Cir. 1970) we refused to extend the coverage of the act to a checker or cashier in a grocery store who operated an electric cash register and counter top conveyor belt.
On the other hand, there are cases which hold that the use of similar mechanical devices renders a business hazardous. In Stephens for Use and Benefit of Stephens v. Catalano, 7 So.2d 380, (La.App.), the court held that the use of an electric meat grinder brings the business of a butcher shop under the act. Storm v. Johnson, 23 So.2d 639 (La.App.), held the same as to an electric slicing machine in a restaurant. In Luce v. New Hotel Monteleone, 234 La. 1075, 102 So.2d 461 (1957) our Supreme Court extended the act to an inspectress in a hotel who regularly used a freight elevator. But see Coleman v. Sears Roebuck & Co., 83 So.2d 469 (La. App.2d Cir. 1955) where the court refused to extend coverage to a department store employee who regularly rode escalators and worked in close proximity to electrically driven accounting machines.
Pinchera v. Great Atlantic & Pacific Tea Co., 206 So.2d 793 (La.App.2d Cir. 1968, certiorari refused) is very similar to the present case in that it involved an electrically operated coffee grinding machine. The decision does not describe the coffeee grinder in detail but holds that the regular use of this machine brought plaintiff within the coverage of the act.
We are aware that Fontenot v. J. Wein-garten, Inc., supra, is presently pending in our Supreme Court on writs. However, we attempted in that case to state' a rationale under which these cases could be decided. We said:
“The test to be applied in determining whether electrically-operated appliances or machinery are hazardous, and thus whether the Workmen’s Compensation Act should apply to a person who regularly uses those devices in otherwise non-hazardous business, is simply whether the employee’s use of or exposure to these devices is such that the risk of a work-connected injury is materially or substantially increased over what it would have been had the employee not been subjected to these hazards. Mercer v. Sears, Roebuck & Company, supra.”
Applying this test to the present case, it is apparent that the mere operation of this coffee grinder did not substantially increase the risk of injury to plaintiff. This machine is entirely enclosed by metal plates. The operator pours the coffee beans in the hopper on top, sets the grind gauge on the side, pulls the levér to grind the coffee and then pours the coffee in the bag. There is no exposure to any working parts, electric wires or other hazardous features.
The only thing which might bring this case within the coverage of the act is the fact that once every three weeks plaintiff had to clean the coffee grinder. Defend *456 ant’s witness, Mr. Olin Carmichael, described this cleaning procedure as follows:
“In taking down this mill, we take one side down at the time, if they desire, because the parts are interchangeable, that is the reason that we ask that one side be taken down at a time. They are interchangeable * * * when we take the mill down, the only tool that is necessary is a screw driver to remove one screw that is holding the retainer arms there. Then we use a paint brush and possibly or most of the time we use a hacksaw blade for the purpose of reaching in where the hands or paint brush won’t get to. When we take the mill apart, we take the select segment out, the rotating assembly, we take that out, and the conveyance spring. There are about four parts that come out of the mill. Then when the mill is not in use, we proceed with the cleaning, and as we complete the cleaning we put the machine back together, and then we are ready to go to the other side.”
Furthermore, plaintiff explained that if a customer wants coffee while one side of the machine is being cleaned, the coffee must be ground on the other side. Of course, the operator must be careful to see that the machine is turned off before the cleaning procedure is resumed. It is apparent that if a person’s hand came in contact with these grinding burrs on some of the other moving parts during the cleaning procedure, a serious injury could result. For these reasons, we conclude that the cleaning of this coffeee grinder regularly exposed plaintiff to a hazardous feature of the business.
For the reasons assigned, the judgment appealed is affirmed. All costs of this appeal are assessed to the defendant appellant.
Affirmed.
HOOD, J., dissents being of the opinion that plaintiff was not engaged in a hazardous feature of the employers’ business.
Rehearing denied.
HOOD, J., is of the opinion that a rehearing should be granted.