A 1937 Oldsmobile coupe and a motor cycle approached each other and collided on U.S. Highway 80, at its intersection with the Broad Acres Road in Caddo Parish, Louisiana, about 9:15 o'clock of the night of July 27, 1940. The automobile was being driven by Durwood A. Sutton at the request of the other occupant, Mrs. Fred Post, allegedly its owner; and the motor cycle was operated and owned by plaintiff, Harry B. Thrash.
As a result of the collision plaintiff sustained serious injuries, and his machine experienced damage amounting to $50; and he seeks a judgment for damages in this ex delicto action brought against Sutton, Mrs. Post and the Continental Casualty Company. The latter insured the Oldsmobile coupe against public liability, with a limit of $5,000 for one person, and against property damage.
The petition alleges that plaintiff was struck by the left rear part of the automobile, and that the accident was caused by *Page 76 
the negligence of defendants in the following respects:
"That said car was being operated recklessly, driven at a speed exceeding sixty miles per hour during the nighttime, on unfamiliar road.
"That the driver failed to maintain a proper lookout for others using said highway, in utter disregard of the rights of your petitioner.
"That said car and its parts and equipment, particularly the brakes and steering apparatus thereof, were defective and in need of repairs.
"That said defendants were driving beyond the center line and on the left hand side of said road in derogation of the traffic laws of the State of Louisiana, which are made a part hereof by reference; that the driver steered said car to his left and then, in an attempt to immediately return to his side of the road, caused said car to strike petitioner and his motor cycle."
In a joint answer, defendants deny negligence on their part, and allege that plaintiff drove his motor cycle into the automobile which was proceeding on its right side of the highway. Alternatively, they plead that plaintiff was contributorily negligent.
The case was tried before a jury, and a verdict in plaintiff's favor for $5,050 was returned. In keeping with the verdict, the district court granted to plaintiff a solidary judgment for the named amount against defendants, Mrs. Fred Post, Durwood A. Sutton and the Continental Casualty Company.
All defendants prosecute this appeal.
At and near the locus of the accident, U.S. Highway 80 runs generally east and west, and is commonly known as the Greenwood Road. It has an 18 foot asphalt surface, is marked with a center line, and is bordered with hard dirt shoulders. Along each shoulder is a ditch. The Broad Acres Road, which is partly surfaced with gravel, intersects it on the south side and courses in a southerly direction.
For about 210 feet west of the center of such intersection, the highway is straight and inclines slightly and gradually; then it curves gently toward the south. Looking eastward from that center point, it is straight but inclines gradually for 675 feet to the crest of a small hill. No foliage or other objects, capable of obstructing the view of motorists, border the highway in the vicinity of the locus.
On the night in question clear weather prevailed, visibility was good, and the highway was dry.
About 3:45 o'clock of the afternoon of July 27, 1940, Mrs. Post and Sutton departed from Grand Prairie, Texas, in the Oldsmobile coupe. Sutton performed the driving. Their destination was Shreveport, Louisiana, 201 miles toward the east, where a visit was scheduled with Mr. and Mrs. Charles Cross, the son-in-law and daughter respectively of Mrs. Post and friends of Sutton.
Approaching the Oldsmobile on U.S. Highway 80, as it neared the Broad Acres Road intersection about 9:15 o'clock P.M. of the named day, were two motor cycles traveling 35 or 40 miles an hour toward the west. Plaintiff, Harry B. Thrash, drove one of these machines, while the other was occupied by Ralph McKenzie and Johnny Manis. These motor cyclists were a part of a group of seven persons enroute to Rose Hill Lake, a swimming resort located several miles farther west. The remaining four had preceded them, and were Albert Teague, John Piezza and Russell Burdman, occupying two other motor cycles, and Porter Wynige, who drove an automobile.
Traveling a short distance to the rear of the motor cycle ridden by plaintiff and the one occupied by McKenzie and Manis was a Plymouth sedan driven by J.T. Mauritzen. Seated beside him on his right was his wife, while their small daughter sat on the back seat.
A Ford V-8 automobile, driven by Mrs. Egan Roach, followed behind and slightly to the left of the Mauritzen machine. Her husband occupied the right side of the front seat.
The collision occurred within the aforementioned intersection of the highway and the Broad Acres Road. Contact was made between the front wheel of plaintiff's motor cycle and the left rear fender of the automobile. The latter machine, following the impact, swerved to its right, traveled easterly along the end of the Broad Acres Road and along the south shoulder and ditch of the highway, and came to a stop approximately 90 feet from the collision point. Its rear end rested in the south ditch and the front portion thereof was on the pavement, pointing northerly. One witness testified that the distance traveled by the car after the collision was 210 feet; but his testimony is contrary to a clear preponderance *Page 77 
of the evidence, including that of one of plaintiff's witnesses, touching this important fact. The motor cycle, with plaintiff on it, caromed to its right and went into the north ditch a few feet west of the intersection.
Plaintiff testified that Sutton was traveling at an excessive rate of speed, about 70 miles an hour, when the accident occurred; and his companions Manis and McKenzie give somewhat similar testimony.
Mrs. Post, although an occupant of the car, did not witness the accident. She was asleep at the time. Sutton stated that he was driving not more than 45 miles an hour. It is possible that his speed was slightly faster than this, but we are satisfied that it was not excessive as plaintiff and his friends contend. If it had been excessive, a stopping of the car within 90 feet after the impact, as was done, could not have been accomplished. Then, too, it must be remembered, and it is a recognized fact, that the gauging of the speed at night of an oncoming car, as plaintiff and his witnesses sought to do, cannot be accurately performed.
Counsel for plaintiff call attention to the testimony of Mrs. Post and Sutton wherein they state that they never at any time during their trip from Grand Prairie, Texas, exceeded 45 miles an hour; and an extensive argument is presented in their brief urging "that it is a physical impossibility to travel a distance of approximately 195 miles, through various towns, particularly the City of Dallas, where any number of lights and stops must be made, within approximately five hours time, and yet not exceed a speed of 45 miles per hour." In this connection it is to be observed that these motorists were on their trip from about 3:45 o'clock P.M. until the time of the accident at 9:15 o'clock P.M., a total of five and one-half hours; and during that period, with a coverage of 195 miles, their average speed was about 36 miles per hour. Considering this calculation, and the fact that only one stop for fuel was made, we are unable to hold that their referred to testimony was fallacious.
The version of plaintiff regarding the manner of the accident's occurrence is found in the following testimony given by him.
"Q. Now when the accident actually happened what did Mrs. Post's car do, just tell the jury how this accident took place in your own words? A. I saw about forty (40) feet before the car got to me the wheel started skidding, I could not say why, it looked like he lost control of the car and he came over on my side.
"The Court: Do not give your opinions or conclusions as to what might have happened.
"A. (Continuing) About thirty or forty feet I will say from my motor cycle in front of me the car swerved across the road, the lights looked like they were coming across into me, heading into me. At the time I tried to dash to the left. I could not get across the line because I did not have time. He made a swing and the car came back like this (witness indicating). Before I had time to get back over he was at an angle — that side-swiped — that threw me nearer the line than ordinary riding because he dodged me and I thought he was going on my side of the road.
"Q. Then what happened? A. It looked like he slapped me in the face just like that. (Witness indicating with fingers.)
* * * * * *
"Q. How far over on your side of the road, that is on the north side of the Greenwood Road would you say the Post car was at the time of the accident? A. At one time it was covering my whole half.
"Q. That was immediately before the accident? A. Yes, sir."
McKenzie, who was an occupant of the accompanying motor cycle, supported that version by stating:
"Q. And at the time of the accident where would you say the Post car was with reference to the center of the road? A. Well, the back end of the car was almost cross-ways the road, the front wheel on his side of the road.
"Q. Now — A. Skidding cross-ways."
But the other eyewitness, Manis, did not observe an almost complete blockage of the road. He testified that the left rear wheel of the automobile was "almost a foot over the line" on the north side of the highway; and that: "Well, it swerved all right, he tried to cut back from Harry and when it did the back wheel hit him."
Sutton described the accident by stating: "Well, just before I came to the intersection of this Broad Acres Road, about thirty (30) or forty (40) feet from the Broad Acres Road, it appeared to be three cars approaching and suddenly the light that was on the vehicle that was in the lead pulled away from the other very suddenly, *Page 78 
and I pulled over on the side of the road and applied my brakes as quickly as possible to try to avoid this vehicle, and at the intersection of this Broad Acres Road this motor cycle struck my left rear fender and due to the asphalt and gravel on the road caused my car to skid and I could not control it and keep it out of the ditch. I stopped it as quick as I could and went back to where the motor cycle was in the ditch and some more gentlemen there * * *."
Also testifying at the trial of the case were Mr. and Mrs. J.T. Mauritzen and Mr. and Mrs. Egan Roach, occupants of the two automobiles that were trailing the motor cycles. Their testimony is extremely important and must be given great weight. All were disinterested witnesses and testified emphatically, clearly and unequivocally. They were neither related to nor acquainted with any of the litigants.
Mrs. Mauritzen, who was on the right side of the front seat of the car that traveled immediately behind the motor cycles, said: "Well, we were behind the two motor cycles, I was watching them because I was not driving, I had a clear view of them, when all of a sudden the one on the other side with one person on it pulled ahead of the other motor cycle. When he did, he got a piece ahead and turned to look back. He made an attempt to turn and cross the black line of the oncoming car — the car swerved on Broad Acres Road and tried to get out of the way of the motor cycle but he hit the fender of it anyhow."
Again Mrs. Mauritzen testified: "I just know when I saw him coming he should have pulled ahead of the other motor cycle. As he did he got a piece ahead and looked back — this other motor cycle just cut in across the black line into the other side of the road. I saw the car coming and I told my husband, `Oh, he is going to hit that car.' That is the way I saw it. I had a clear view of it."
Mr. Mauritzen, a clerk of the L. A. Railroad Company for ten years, gave the following testimony:
"Now Mr. Mauritzen, will you tell the jury and court, slowly, only what you know and only what you saw just how the accident occurred? A. Well, we were driving west on the Greenwood Road and there were two motor cycles ahead of us about fifty yards, and the motor cycle that had one on it was on the inside and for some reason he pulled out ahead of the other and when he did he looked back and at that particular moment when he looked back he cut into the lefthand side of the road and struck this car that was going east.
"Q. About what part of the road, on the north or south side of the road, did the impact take place? A. On the south side.
"Q. About how far was that from the center line of the road? A. It looked to be about two or three feet on the south side.
"Q. Now with relation to the Broad Acres Road about where did the impact occur? A. Just about the center of the intersection of the Broad Acres Road and the Greenwood Road."
Mrs. Egan Roach was driving behind the Mauritzen vehicle, but on its left attempting to pass, when the accident happened. She stated positively that she witnessed the motor cycle swerve to its left and to the south of the center line of the highway, and at the same time saw the oncoming Sutton automobile swerve to its right.
Mr. Roach, a dairyman who lives on the Greenwood Road, did not see the impact. He was seated to the right of his wife, and the preceding Mauritzen car obstructed his view. He observed after the collision, however, a sidewise skid mark south of the highway's center line within the intersection. This mark was also noticed by Mrs. Roach and Mauritzen.
Wynige, McKenzie and Piezza, three members of plaintiff's party, visited the scene of the accident on the following morning. Wynige testified that he saw tire marks that "started first way back up the road down-hill and cut across the black line to Mr. Thrash's — they came across the road on Mr. Thrash's side a little bit way back up the road. It looked like he tried to stop it up there, he got straightened up and come down the road and crossed over to Mr. Thrash's side, I would say, eighteen (18) inches or two (2) feet on his side of the road and he continued up Mr. Thrash's side of the black line. * * * Then they crossed over on his side of the road after the accident. After the accident he crossed back to the right and slid off to the shoulder and was left on his own shoulder."
Piezza described skid marks by saying: "They rode up to the point of the accident to where the car stopped, you could see them plainly. * * * You could tell where the car swerved over on the left hand side of the road and just angled off *Page 79 
where it had stopped over on the shoulder of the road and over in the ditch."
It seems strange that the marks assertedly found by Wynige and Piezza were not seen by the above named completely disinterested witnesses, in as much as, according to the description given, such marks were lengthy and continuous. It is likewise strange that McKenzie, who also made an examination of the place, gave no testimony regarding the existence of the marks.
It is an established and well recognized doctrine that negligence is never presumed, and the burden of proving it rests on the one who charges its presence. Furthermore, negligence must be established with reasonable certainty and by a preponderance of the evidence, a showing of the mere possibility or probability of its existence being insufficient.
A consideration of all of the proof in this case in the light of the stated basic rule of evidence, leaves us with the conviction that the plaintiff Thrash has not discharged the burden which he carried. Certainly it can not be correctly said that a preponderance of the evidence supports his claim of Sutton's negligence, when it is considered that the testimony of his friendly witnesses is flatly contradicted by that of the mentioned disinterested persons, and when it is further considered that the physical facts, particularly the peculiar manner in which the vehicles contacted each other, are in corroboration of the latters' testimony.
Of course, as has often been said, the verdict of a jury is entitled to great weight, and an appellate court is reluctant to disturb it. But it is also true that such a court of this state must pass on the facts of a civil action as well as the law applicable, and it must set aside the verdict of a jury if manifest error has been committed. In this case, we think that there has been a commission of error of that kind.
Invoking the last clear chance doctrine, as an alternative proposition, plaintiff says that if Thrash did turn in front of Sutton, the latter saw his turning when quite a distance away; and, such being the case, Sutton had an opportunity, or the last chance, to avoid the collision by slowing down or coming to an immediate stop. The evidence does not support this theory. Thrash's turn was sudden, and was made while Sutton was only 30 or 40 feet from him; hence the impact was inevitable, and the mentioned doctrine is inapplicable.
The judgment of the district court, therefore, is reversed and set aside, the demands of plaintiff are rejected, and the suit is dismissed at his costs.