159 So.2d 26 (1963)
Marcel CRIER, Simon Crier, Versie Crier, wife of Eastman Scott and Ruth Crier, wife of Charles Hall,
v.
MARQUETTE CASUALTY COMPANY.
No. 1209.
Court of Appeal of Louisiana, Fourth Circuit.
December 2, 1963.
Rehearing Denied January 6, 1964.
Writ Refused February 14, 1964.
*27 Smith & Waltzer, Benjamin E. Smith, New Orleans, for plaintiffs and appellees.
Martin, Himel, Morel & Daly, Sigur Martin, William J. Daly, New Orleans, for defendant and appellant.
Before McBRIDE, REGAN and HALL, JJ.
McBRIDE, Judge.
Marquette Casualty Company, which was sued in a direct action for damages ex delicto by the four children of Cassie Perkins Crier, has appealed from a judgment rendered after a jury trial in plaintiffs' favor for the sum of $8,000 for their mother's death. Plaintiffs' mother was killed in an accident which occurred during daylight on January 17, 1962, on Louisiana Highway No. 37 near the town of Greensburg, Parish of St. Helena, involving an automotive-truck operated by Bailey Miles in which she was a guest passenger and a passenger automobile driven by Myrtle B. Carson which was covered under a public liability policy issued by defendant insurer. The two vehicles, which were both traveling easterly or in the direction toward Greensburg, collided as Mrs. Carson attempted to pass Miles's truck on the left. The automobiles, after coming together and interlocking, veered to the right and ran off Highway No. 37 crossing the shoulder thereof, and then negotiated the south ditch paralleling the highway and crossed a gravel road known as Tung Road and its ditches. The Miles truck proceeded onward into the woods striking a tree head on and the Carson car turned left and went back through the south ditch of Highway No. 37 and onto the shoulder of the highway where it came to rest. Bailey Miles, the common-law husband of Cassie Crier, was killed instantly. Cassie Crier was severely injured and died sixteen days later. Mrs. Carson was uninjured.
The charge of negligence against Mrs. Carson is found in Art. VI of the petition which reads as follows:
"When Carson had partially completed her passing maneuver, which was just below the crest of a hill and only a few hundred feet from an intersection to the right with the Tung Oil Road, (all of which movement was not only careless and negligent but unlawful). She steered her vehicle right to return to the right hand lane in such a careless and negligent fashion so as to turn directly in front and immediately forward of the Miles' truck, locking her right rear bumper with the left front bumper of the Miles' truck."
It is alleged in the following article of the petition that "solely because of the excessive speed of Carson's car" it dragged the Miles truck off the road.
There is no evidence to the effect that the Carson car was being driven at an excessive or unlawful speed and plaintiffs' counsel make no pretense that it was. The question of Mrs. Carson's negligence, if any, is to be answered by the manner in which she attempted her passing of the truck. She is the only surviving eyewitness and her testimony regarding the accident is the sole evidence upon which a decision in the case must be based. Although not a defendant, she was placed on the witness stand under cross-examination by plaintiffs' counsel under LSA-R.S. 13:3662, and when requested to tell the jury what she knew about the accident stated:
"Well, I wasstarted to Greensburg to pick up my sister, and I was driving down the roadand I was driving down the road going about 40 miles an hour and ran upon a green pickup *28 truck. So I was going about 25 or 35 miles an hour and I decided I'd go around him.
"I blew my horn and I looked in the mirror to see if anybody was coming behind me, and there wasn't anybody in front of me, so I blew my horn. As I turned out in the left lane to go around him, and as I drove on the left lane, well, he kept pulling over on me; kept pulling over on the left side of the road. And I went out on gravel and he just kept pulling over, so I put my hand on the horn and blowed it constantly and kind of turned my head. And when I did, I didn't see him so I wentdrove a little faster and when I did, I felt something knockbump me. And after my car turned to the right and went to pulling over to the side of the road and I went to theacross the little gravel road down by a telephone pole and back into a ditch on 37 Highway.
* * * * * *
"Q. * * * you state that when you started first to pass the truck you would judge you slowed down to about half the speed you had been traveling, or to around 20 miles per hour?
"A. Yes, 20 or 25 miles an hour I slowed down to pass him."
Mrs. Carson iterated and reiterated on her rigorous cross-examination that when the bump came she was going straight ahead, and after the bump her car was pulled or shoved to the right by the truck which became interlocked with its right rear. She stated she could not veer any farther to her left because of the likelihood of running into the ditch alongside the highway.
Photographs of the damaged vehicles reveal that the rear half of the right rear fender of the Carson car was completely torn away and that the right end of the rear bumper was bent backward. The whole front of the truck was badly damaged, the front bumper being badly bent undoubtedly because of the force with which it struck the tree. Astute counsel for plaintiffs argue strenuously that the damage sustained by the right rear of the Carson car indicates beyond doubt that the right end of Mrs. Carson's rear bumper became entangled with the left end of the front bumper of the truck because of Mrs. Carson's negligent attempt to return to her right lane prematurely and before she had passed the truck far enough to safely permit such maneuver.
Counsel also suggest that the fact that Mrs. Carson attempted the passage on a downgrade in the vicinity of an intersection and her car was heading into a deep depression "the bottom of which she could not see" leads to a reasonable conclusion that in the course of passing the truck she realized her dangerous position and in a hasty attempt to extricate herself therefrom negligently swerved to her right too soon. In their brief counsel also say:
"* * * One of these is the illusion that sometimes occurs, perhaps to inexperienced drivers with greater intensity than to others, that the car being passed is moving to the left. This happens when the passing car closes upon the vehicle being passed and the perspective changes. Very seldom does the passed car move over, it only appears to do so. It may well have occurred to the jury that Mrs. Carson, as an inexperienced driver suffered from this feeling. Certainly, when this is coupled with the hazardous circumstances of her passing maneuver, her acts amounting to negligence, while understandable, become obvious."
Plaintiffs' counsel call attention to the testimony of Corporal Needham, a member of the Louisiana State Police, who made an investigation of the occurrence shortly after it happened which is to the effect that there was a skid mark in the right-hand lane which started about two feet from the median stripe in the highway and then ran for some distance and ultimately off the road. The officer's opinion was that the *29 skid mark was made by one of the right-hand tires on the Carson automobile. The argument follows that the position of the skid mark demonstrates that the right side of the Carson car had returned to the right-hand lane when the cars contacted each other.
Plaintiffs' whole case is based on the rankest kind of speculation. The photographs, it seems to us, would just as well bear out Mrs. Carson's testimony that the truck kept bearing over on her, struck her car, became interlocked therewith and then pushed or dragged her vehicle with it off the right side of the road. The intersecting road mentioned by counsel is a narrow gravel road located some distance down the highway from the point of impact. This secondary gravel road does not completely cross the highway but runs into it from a right angle and there ends. This is hardly such an intersection as would be contemplated by LSA-R.S. 32:233, subd. E (prior to amendment by Act 310 of 1962) which prohibits the passing of another vehicle at an intersection of the highway. Moreover, the passage was attempted a few hundred feet from the gravel road. This is alleged in the petition. As to the "deep depression" spoken of by counsel, the testimony of the Parish Surveyor shows it is but a dip of 6 feet over a distance of 500 feet and we do not think that it should be dangerous to pass another vehicle on such a slight downward grade.
The existence of the skid marks pointed to by the police officer cannot be said to bear out the contention that Mrs. Carson endeavored to return to the right-hand lane before completely clearing the truck. There was no debris from the undercarriage of either car to indicate to the officer just where the actual impact took place, and not knowing just where the cars came together, the police officer certainly could not say that the collision took place where the skid marks commenced. It is entirely possible that such marks were left by Mrs. Carson's tire after her car had been pushed or dragged by the truck from the left lane into the right lane.
We have carefully studied the testimony of Mrs. Carson and while some minor inconsistencies appear thereinthese most probably due to the nature of the strenuous cross-examinationthey in no manner would have the effect of destroying her veracity or the weight to be given to her testimony. She was most positive and declared without qualification that she attempted to pass the truck, that it veered over on her car causing her to swerve onto the left shoulder of the highway as far as she dared and when the vehicles came into contact, her car was moving straight ahead. She denied most emphatically she had attempted to return to the right lane. Our opinion cannot be other than that the accident happened in the manner she described. Although standing alone, her testimony is logical and is worthy of belief.
In a personal injury action where there is no positive testimony except that of one of the interested litigants, it is necessary for the court to carefully scrutinize the testimony and to study in detail circumstances which might tend to disprove it. Franklin v. Texas & P. R. Co., 35 So.2d 251. This we have done, and find no circumstances which could in any way cast doubt upon what the only eyewitness had to say.
Interested persons are competent witnesses and their testimony is binding on the court unless overcome by counter testimony or testimony irreconcilable with the known facts of the case. Marks v. New Orleans Cold Storage Co., 107 La. 172, 31 So. 671.
It is obvious the members of the jury were of the opinion that both drivers were to some degree negligent and that their concurring negligence caused the death of Cassie Perkins Crier because in these proceedings the survivors of Bailey Miles also sought recovery from the defendant for his death, but on their demands the jury's verdict went against them. On what theory *30 they concluded Mrs. Carson was negligent we are at a loss to understand. Their finding of negligence on her part was not predicated upon any evidence or circumstances appearing in the record, and their verdict against defendant is clear and manifest error.
A guest passenger has no greater rights to damages than the driver of the vehicle in which he is riding against another non-negligent motorist. Little v. Houston Fire & Casualty Co., La.App., 66 So.2d 532; Johnson v. Houston Fire & Casualty Co., La.App., 66 So.2d 533; Little v. Houston Fire & Casualty Co., La.App., 66 So.2d 533.
Although the jury's verdict is entitled to great weight, an appellate court is under the duty of passing upon the facts as well as the applicable law in a civil case and the court is duty bound to set aside the verdict of the jury if manifest error has been committed on questions of fact. L.S.A.-Const. 1921, Art. VII, § 29, as amended; Thrash v. Continental Casualty Co., La.App., 6 So.2d 75.
If the forward automobile driver is proceeding on the right of the road apparently in response to a signal of an overtaking motorist and suddenly returns to the middle of the road, the negligence resulting in a collision would be that of the forward driver and not of the overtaking driver. McCain v. Pan-American Petroleum Corporation, La.App., 142 So. 376; reinstated on rehearing, 146 So. 331.
The courts of this state have many times declared that probabilities, surmises, speculations and conjectures cannot be accepted as sufficient grounds to justify recovery to a plaintiff who is charged with the burden of proof. Pinkney v. Cahn Inv. Co., La.App., 32 So.2d 345.
Negligence is never to be presumed and the burden of proving it rests upon the party who charges its presence. Thrash v. Continental Casualty Co., supra.
Therefore, that portion of the judgment rendered in favor of plaintiffs and against Marquette Casualty Company is reversed and the first paragraph of the judgment is amended so as to provide that there be judgment herein in favor of the defendant, Marquette Casualty Company, and against the plaintiffs, Marcel Crier, Simon Crier, Versie Crier, wife of Eastman Scott, and Ruth Crier, wife of Charles Hall, dismissing the said plaintiffs' suit at their costs, and as thus amended and in all other respects the judgment is affirmed; costs of this appeal are to be borne by the above-named plaintiffs
Reversed in part; affirmed in part.
REGAN, Judge (dissenting).
I respectfully dissent.
In my opinion, the only question posed for our consideration on appeal is whether the finding of fact by the jury herein was so erroneous and unsupported by the evidence as to warrant a reversal by us.
I am convinced that the inconsistencies in the testimony of Myrtle B. Carson, the defendant's insured, who is the only living eye-witness to the accident, together with the physical evidence adduced herein, such as the skid marks and the photographs of the damaged vehicles, supports the verdict of the jury. Under these very exceptional circumstances I do not think that we should substitute our judgment on a pure question of fact for that body of men who were legally selected to inquire into the facts hereof and to render their verdict according to the evidence adduced herein.
In conformity with the foregoing rationale, I am of the opinion that the judgment of the lower court should have been affirmed.
Rehearing denied; REGAN, J., is of the opinion that a rehearing should be granted.