GLADNEY, Judge.
This appeal presents for review the amount of awards in favor of plaintiffs in damages by a jury verdict. The liability insurer, Aetna Casualty & Surety Company, appellant herein, contends the jury abused' its discretion in awarding excessive and exorbitant amounts.
The action arises from an automobile accident which occurred on August 8, 1965, at which time Fleta A. Ware was driving an automobile owned by Earl Jackson Jones in a southerly direction on Louisiana Highway 1 about sixteen miles south of Shreveport in Caddo Parish, when the vehicle was struck head-on by an automobile owned by the American Loan Service, Inc., the insured of Aetna, and driven by Beverly J. Miles, Jr., who was killed in the accident. Prior to trial of the case, the defendant admitted liability and the case went to the jury solely upon the question of quantum.
After the rendition of the verdict by the jury, which the defendant considered as including grossly excessive awards, the trial court refused to grant a new trial or order remittiturs and this appeal was perfected from the judgment containing the following awards by the jury: Earl J. Jones, individually, the sum of $4,500.00; Earl J. Jones, as head and master of the community of acquets and gains existing between him and Fleta A. Jones, the sum of $18,800.00; Fleta A. Jones, for the use and benefit of the minor, Brenda Ware, the sum of $6,-500.00; Fleta A. Jones, for the use and *525 benefit of the minor, Janie Ware, the sum of $500.00; John D. Adams, as head and master of the community of acquets and gains existing between him and Mrs. Bertha Adams, the sum of $1,832.90, and to Bertha Adams, the sum of $95,000.00.
Specifications of error assigned by appellant are that: The district judge erred in signing a judgment based upon grossly excessive amounts, in refusing to grant a new trial and in refusing to order a re-mittitur; the district judge erred in refusing to permit counsel to argue to the jury and inform it of awards made by the appellate courts in Louisiana in similar cases; the jury erred in awarding punitive damages and ignoring the charge of the court that such damages are not recoverable, and the jury erred in assessing and awarding grossly excessive amounts.
The errors relied upon by appellant in that the district court approved excessive amounts awarded by the jury and in refusing to order a remittitur or grant a new trial have not, in our opinion, unduly prejudiced the rights of the defendant. No showing is made that there was any misconduct on the part of the jury or that peremptory grounds for a new trial were presented as provided in C.C.P. arts. 1813, 1814 and 1972. Discretionary action on the part of the trial judge is permitted under C.C.P. arts. 1971 and 1973. The trial judge has much discretion regarding applications for a new trial. However, in a case of manifest error the appellate court will not hesitate to set the trial court’s ruling aside or grant a new trial when timely applied for. Official Revision Comment to art. 1971. In Crier v. Marquette Casualty Company, 159 So.2d 26 (4th Cir.1964, cert. denied) the court commented upon this principle of law, saying:
“Although the jury’s verdict is entitled to great weight, an appellate court is under the duty of passing upon the facts as well as the applicable law in a civil case and the court is duty bound to set aside the verdict of the jury if manifest error has been committed on questions of fact. LSA-Const.1921, Art. VII, § 29, as amended; Thrash v. Continental Casualty Co., La.App., 6 So.2d 75.” [159 So.2d 26, 30]
Exception is also taken to the ruling of the district court in refusing to permit counsel to argue to the jury and inform it of awards made by the Appellate Courts in Louisiana in similar cases. We are referred to no instances in which there has been a ruling on this identical question. The case of Little v. Hughes, 136 So.2d 448 (1st Cir.1961) had under consideration the authority of the trial judge to prevent counsel from reading to the jury from law books during closing argument and it was held that any error resulting from such refusal was not harmful or prejudicial. The ruling is, we think, equally applicable to the question presented to this court. In the Little case the court stated:
“Even if we were disposed to hold that it was error for the learned trial judge to prohibit counsel for defendant to read from a lawbook in his closing argument to the jury, we still find that defendant would not have been harmed nor prejudiced by such error. The jury verdict, both as to the findings of facts and the application of the law to the facts so found, are reviewable by this court. The ruling complained of did not keep any material fact away from the jury and defendant has had full opportunity to present the applicable law to this court. We would not be justified in remanding this cause for a new trial when we are in a position to adjudicate this matter from the record made up in the trial court.” [136 So.2d 448, 452]
Nor do we find merit in the charge that the jury erred in awarding punitive damages and ignoring the charge of the court that such damages are not recoverable. A study of the exact charge as given by the trial judge to the jury discloses no ambiguity and in plain terms, charges the jury that punitive damages are not recoverable. The *526 basis of the complaint is manifestly predicated on assumption and suspicion for there is no way for counsel to know that the action of the jury was punitive.
Before directing our attention to a consideration of quantum, reference is had to some of the established guidelines. After Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963), the Supreme Court gave further consideration to the abuse of discretion by a court or jury in assessing damages in the case of Ballard v. National Indemnity Company of Omaha, Nebraska, 246 La. 963, 169 So.2d 64 (1964). Speaking through the Chief Justice, after commenting to the effect that in the review of damage assessment the general evidential rules of preponderance of evidence or manifest error are not pertinent and are without application since the only question is whether the lower court has abused its discretion in assessing damages, the opinion stated:
“In resolving the question of whether the jury in fixing the amount of the award in the Gaspard case had abused the discretion vested in it by law, we pointed out that ‘ * * * In view of our codal provision, the appellate courts should consider the amounts of awards in other cases only so far as they are relevant to the question of whether the judge or the jury has abused its discretion in fixing the award in the case under consideration.’ However, an appellate court should not fix the amount of the award solely to maintain uniformity of awards, thus ignoring the prerogatives of the trial judge or jury in assessing awards in such cases as set forth in Art. 1934 of the Civil Code. The amounts of awards in so-called ‘similar’ cases are relevant only to determine whether there has been an abuse of discretion, but for no other purpose — that is, to determine whether the award is so excessive or so inadequate as to be an abuse of discretion. In this connection it must always be remembered, as said in Gaspard, that ‘ * * * cases relied upon may be similar in that each of them involves a similar injury such as a broken arm, the loss of an eye or eyes, or the loss of some member of the body. Thereafter, however, the similarity ceases for each case is different, and the adequacy or inadequacy of the award should be determined by the facts and circumstances peculiar to the case under consideration.’ ” [169 So.2d 64, 67]
Within the bounds so prescribed, we next consider whether or not there was an abuse of discretion by the jury in connection with the individual awards. Important evidence presented to the jury consisted of photographs which undoubtedly substantially affected their judgment, particularly with reference to cosmetic damages. The writer of this opinion finds it impossible to adequately set forth a description of the disfigurement and changes in appearance as reflected in the photographic evidence. In attempting to reach a proper measure of damages in our review of whether or not the jury verdicts were so excessive as to constitute an abuse of discretion, we have studied the many cases cited as being com-parables.
Especially informative have been two annotations found in 11 A.L.R.3d, pp. 9-364 entitled Excessiveness or Adequacy of Damages Awarded to Injured Person for Injuries to Arms, Legs, Feet, and Hands and pp. 370-713 entitled Excessiveness or Adequacy of Damages Awarded to Injured Person for Injuries to Head or Neck (1967). The comments therein are comprehensive with references to pertinent Louisiana decisions.
Earl J. Jones individually was awarded judgment for $4,500.00, which amount included special damages consisting of loss of pay for eleven weeks during disability, $880.00; for medical expenses $247.64; damages for the total loss of his automobile in the accident $375.00, a total of $1,502.61. After deducting this amount from the award of $4,500.00, it is evident that the jury allowed about $3,000.00 as damages for his personal injuries. These *527 consisted of a two-inch laceration of the forehead, multiple abrasions and contusions of both knees and the left chest wall. During a hospitalized period of six days an abscess developed in his right thumb which was opened and drained. His recovery took approximately eleven weeks. We do not consider the award as made by the jury excessive.
Earl J. Jones additionally sought damages as head and master of the community existing between himself and Fleta A. Ware Jones. In this connection the record discloses that at the time of the accident on August 8, 1965 Fleta A. Ware' was married to Joe L. Ware from whom she secured a divorce on December 30, 1965. Janie Ware and Brenda Ware were children of this marriage. She married Earl Jackson Jones on December 31, 1965. There is no specification in the jury verdict or the judgment as to the basis for the allowance so made. The evidence indicates the award was for loss of wages which would have accrued to Fleta Ware Jones had she been able to continue with her employment after her marriage to Jones. The argument is made that because of her injuries Mrs. Jones was permanently disabled and there would be a loss of wages due the community. Mrs. Jones did sustain serious injuries to her right leg consisting of a fracture in the area of the mid and distal third of the right femur and a fracture of the kneecap. The orthopedic surgeon, Dr. A. E. Dean, estimated there would be permanent fifteen per cent disability. Additionally, Mrs. Jones completely lost the hearing of her right ear, which undoubtedly would be a handicap in her employment. The medical evidence does not sustain a finding that the injuries of Mrs. Jones, if permanent, would necessarily be of such a totally disabling nature as to prevent her from obtaining employment. We have concluded that most of her residual disability with reference to her leg injury would disappear after three years or 156 weeks, approximately, and, therefore, find that the total loss of wages should be fixed at $8,-580.00 of which amount the community is entitled to $7,535.00 and the separate estate to $1,045.00. Therefore, we hold that the award of $18,800.00 as set forth above is excessive and should be reduced to a total of $7,535.00.
Mrs. Fleta Ware Jones, individually, was awarded the sum of $75,000.00. Mrs. Jones was 27 years of age at the time of the accident, having previously been married to Joe L. Ware, the father of her four girls, and from whom she received no support, and had been separated for about four years. She supported herself as a waitress earning an average of $55.00 per week. Her claim included special damages of loss of 19 weeks (from August 8 to December 30) of wages or $1,045.00, and medical expenses for herself and her children of $2,121.57, constituting special damages of $3,166.57. Subtracting these amounts from the jury award, there remains approximately $71,833.43 allowed on account of personal injuries. These include in addition to pain and suffering, fractures of the right femur, the patella, the mandible, the condyle, the nasal septum, total loss of hearing in the right ear, multiple contusions, bruises and brain concussion. At the time of trial, November 15, 1966, Mrs. Jones still experienced residuals in the nature of pain from her leg, inability to stand for a sustained period of time, inability to fully bend her knee, and soreness and irritation resulting from the wires which were placed in her jaw bone. Her appearance presents a scarred forehead, face, neck and collar bone. The severance of nerves have left her with a total and permanent loss of hearing in one ear, and an absence of feeling in her lower lip and chin. This results in an inability to sense the presence of food or liquid on her lip or chin. She sustained multiple severe injuries and we are of the opinion she should receive substantial compensation but we find the award of $75,000.00, of which approximately $72,-000.00 was granted for general damages, is excessive and the total award should be re *528 duced to $43,166.57, of which latter amount, $3,166.57, is for special damages as set forth above.
Mrs. Fleta Ware Jones for the use and benefit of her minor child, Brenda Ware, was awarded the sum of $6,500.00. Brenda was six years old at the time of the accident. In addition to bruises, contusions and concussion, she sustained a through and through laceration of her upper lip which left a cosmetic defect. The surgeon required three layers of sutures to close the wound. She was hospitalized for three days. Dr. L. C. Butler, Jr., a plastic surgeon, was of the opinion that plastic surgery should be performed for the purpose of removing the scar and improving the muscle and line of the lip. This would require anesthesia and the estimated cost of this surgery is $509.00, after which there would be some permanent scarring. The award as made by the jury was excessive to the extent of $3,500.00, but the amount should include $509.00 for future plastic surgery. The total award is fixed at $3,-509.00.
Mrs. Fleta Jones was allowed the sum of $500.00 for the use and benefit of her minor daughter, Janie Ware. The award for this four year old child is nominal, and although it appears the only injury received by Janie was a small laceration of the right eyebrow and required only one stitch, the child underwent severe shock and sustained bruises in the head-on collision. We find no occasion to modify this award.
J. E. Adams was awarded judgment for $1,832.90. This amount was allowed for medical expenses of Mrs. Adams amounting to $911.90 and $920.50 for estimated future medical expenses for corrective surgery. Parenthetically, we may add that the award of $1,832.90 reflects an error in addition of 50‡, $1,832.40 being the correct amount. The record indicates that Mrs. Adams will not submit to plastic surgery. The testimony of medical expects indicate the overall results thereof will probably be unsatisfactory. Therefore, the sum of $920.50 is disallowed and the award for $1,832.90 is reduced to $911.90.
Mrs Bertha Adams was awarded the sum of $95,000.00. At the time of the accident she was 61 years of age and was a housewife. The greater portion of the award to Mrs. Adams was for injuries to her face and head. One of the attending surgeons, Dr. Albert L. Bicknell, testified the cosmetic results were the worst he had seen during his years of practice. She was thrown through the windshield headfirst and the greater portion of her face was described as hanging away from the bone. There were crushing facial injuries to the face, mouth, lips, nose and septum and turbinates. After the accident she was in a critical condition from shock and loss of blood and underwent surgery which lasted two hours and forty-five minutes and necessitated approximately 400 sutures and ties. Nerve injuries involved muscle control and sensation. Some of the results include interference with eating and control of food inside of the mouth; she is unable to control saliva running from the corner of her mouth; cannot register expression on the right side of her face; has to speak out of one side of her mouth, and half of her right cheek and the right side of her nose and lips are completely numbed. As to the future, medical experts were in agreement that nothing could be done to improve her condition functionally, and that cosmetically it is doubtful fhat improvement from plastic surgery would be worth the trouble, time and expense. Other permanent residuals include inability to wear dentures, chronic gastritis and the psychological effect of disfigurement. We have reached the conclusion that a total award of $50,000.00 should be made, and accordingly, the jury verdict of $95,000.00 is so reduced.
In accordance with our findings, as set forth above, the awards in favor of Earl *529 J. Jones as head and master of the community, is reduced from $18,800.00 to $7,-535.00; the award in favor of Mrs. Fleta Ware Jones, individually, is reduced from $75,000.00 to $43,166.57; the award in favor of Mrs. Fleta Ware Jones for the use and benefit of her minor child, Brenda Ware, is reduced from $6,500.00 to $3,509.00; the award in favor of J. D. Adams as head and master of the community is reduced to $911.90, and the award in favor of Mrs. Bertha Adams is reduced to the sum of $50,000.00. As so amended, the judgment from which appealed is affirmed. Cost of this appeal is taxed against appellees.