LOBRANO, Judge.
Defendants-appellants, Noel D. Johns, W.C. Fore Trucking Company, Inc. and *932 Continental Insurance Company appeal from a judgment notwithstanding the verdict (N.O.V.) in favor of plaintiff-appellee, Elvira W. Giraud.[1] We reverse.
FACTS:
On November 22, 1983, four employees of W.C. Fore Trucking were enroute from Pass Christian, Mississippi to a town west of New Orleans to deliver a load of concrete pilings. The convoy consisted of four tandem truck rigs each carrying four or five of the pilings. The trucks were traveling single file in the right lane of traffic along Interstate 10 to their destination.
At approximately 9:30 a.m., as the convoy approached the entrance ramp at Chef Menteur Highway in New Orleans, three of the trucks were still in close order, one behind the other. Noel Johns was driving the lead truck. Jessie Lambert was driving the truck directly behind Johns and John Ravoire was driving the truck directly behind Lambert. All three trucks were in the far right lane of traffic and were traveling between 45 and 50 miles per hour. As the Chef Menteur entrance ramp emerges onto the interstate it forms a fourth lane of traffic. As Johns (the lead truck) passed the entrance ramp he felt a “thump” near the rear trailer wheels. Looking into his rear view mirror he observed a blue Ford automobile swerving in the fourth lane of traffic before hitting the concrete railing on the outside of the entrance ramp. He stopped the truck rig on the shoulder of the highway. Upon inspecting the scene it became apparent to Johns that the automobile had struck the right rear portion of the trailer rig.
The automobile was driven by Elvira Gi-raud. Her husband, Lewis Giraud was a guest passenger.
The police were called to the scene. Mrs. Giraud was taken to Methodist hospital. X-rays revealed that she had not sustained any fractures in the collision. She was released later that day. On November 13, 1983, the day following the accident, Mrs. Giraud visited her personal physician, Dr. Paul Naccari complaining of muscle spasm and low back pain. Dr. Naccari treated Mrs. Giraud for the spasm and a weakness or “wobbling” in her legs until February 12, 1984 at which time he noted that her chest and back had improved and discharged her on an “as needed” basis. Mrs. Giraud did not seek additional treatment. She returned to work as her husband’s secretary. Over one year later, on December 20, 1984, Mrs. Giraud sustained a pathological fracture of the hip while climbing the stairs in her home. At trial, Dr. Alain Cracco, Mrs. Giraud’s orthopedist, testified that the critical factor causing the hip fracture was Mrs. Giraud’s preexisting osteoporosis.[2] Dr. Gernon Brown, another orthopedist, testified that Mrs. Giraud’s hip fracture was unrelated to the accident.
Defendants exercised their right to a jury trial which was held on January 12, 1987. The jury in a 10 to 2 vote found no liability on the part of Johns. Pursuant to the jury verdict, the court rendered judgment in favor of defendants on January 22, 1987 dismissing Mrs. Giraud’s personal injury suit with prejudice. On February 3, 1987, Mrs. Giraud filed a Motion for judgment notwithstanding the verdict (N.O.V.) or in the alternative a motion for a new trial. On March 25, 1987, the trial court granted Mrs. Giraud’s motion for judgment N.O.V. and awarded $390,752.02 in damages. No ruling was rendered on the motion for a new trial.
Defendants appeal the judgment N.O.V. asserting the following assignments of error:
1) The district court erred in granting Mrs. Giraud’s motion for judgment N.O. V. where reasonable men could disagree as to the cause of the accident;
2) In the alternative, the district court erred in awarding $390,752.02 in damages for a muscle strain of approximately four months in duration.
*933 After a careful review of the evidence and testimony produced at trial, we reverse the judgment N.O.V. for the following reasons.
In Scott v. Hospital Service District No. 1 of the Parish of St. Charles, 496 So.2d 270 (La.1986), the Louisiana Supreme Court held that the standard for a judgment N.O. V. “requires that the motion be granted only when the evidence points so strongly and overwhelmingly in favor of the moving party that reasonable men could not reach different conclusions, not merely when there is a preponderance of evidence for the mover.” supra at 274. (citing Robertson v. Penn, 472 So.2d 927 (La.App. 1st Cir.1985)) Similarly, in Blum v. New Orleans Public Service, Inc., 469 So.2d 1117 (La.App. 4th Cir.1985), writ denied 472 So. 2d 921 (La.1985), this court articulated the criteria for deciding a motion for judgment N.O.V. as follows:
“... the trial judge considers all of the evidence and reasonable inferences in a light most favorable to the party opposed to the motion. If the facts and inferences. point so strongly and overwhelmingly in favor of one party that the court believes that reasonable persons could not arrive at a contrary verdict, the motion should be granted and the trial judge should render a judgment notwithstanding the jury’s findings. On the other hand if there is substantial evidence of such quality and weight that reasonable and fair minded persons in the exercise of impartial judgment might reach different conclusions, the motion for judgment N.O.V. should be denied. In applying this standard, the court does not weigh the evidence, pass on the credibility of the witnesses, or substitute its factual judgment for the jury’s” Id. at 1119.
These criteria have been recently applied by this Court. In Boisdore v. Bridgeman, 502 So.2d 1149 (La.App. 4th Cir.1987), a judgment N.O.V. was reversed because “the evidence simply was not so overwhelmingly in favor of [the moving party] that interference with the jury’s findings was justified.” supra at 1156. See also, Boydell v. New Orleans Public Service, Inc., 503 So.2d 551 (La.App. 4th Cir.1987).
As between drivers of colliding vehicles, there is no presumption of negligence. The plaintiff driver has the burden of proof. Crier v. Marquette Casualty Company, 159 So.2d 26 (La.App. 4th Cir. 1963); Miller v. Lowry, 409 So.2d 1252 (La.App. 2nd Cir.1982).
EVIDENCE AND TESTIMONY
The only fact witnesses to testify were the investigating police officer, Officer Albert Spiess, Giraud’s husband, Lewis Giraud, and three of the four truck drivers, Noel Johns, Jessie Lampley and John Ra-voire.
Officer Spiess’ testimony was inconclusive as to fault. Upon arriving at the accident scene, Spiess found the Giraud vehicle approximately 50 feet into the entrance ramp with the right front wheel jammed against an 8 to 12 inch cement block. The driver’s side of the vehicle exhibited tire marks running from the rear of the vehicle to the front tire. The passenger side was damaged only at the extreme right front where the front right fender struck the interstate railing. Officer Spiess was unable to conclude a point of impact in the roadway where the collision occurred. All that he could conclude was that the car collided with the rear wheels of the truck which could have occurred in either driver’s lane of traffic.
Noel Johns testified that, at the time of the collision, he was traveling at approximately 40-45 miles per hour as he passed the entrance ramp. He stated that he maintained the truck at all times in the right lane of traffic as required by law and at no time crossed into the entrance ramp lane of traffic. He testified that he did not see the Giraud vehicle at all until he felt a “thump” and looked into his rear view mirror. Johns’ testimony alone would have been sufficient to support the jury’s verdict. Once the jury accepted Johns’ testimony as true, the only inference they could have drawn was that Mrs. Giraud attempted to merge into Johns’ lane of traffic before Johns had completely passed.
*934 Jessie Lampley was driving the truck directly behind Johns. He testified that Johns never left the right lane of traffic and that the Giraud vehicle entered the interstate from the entrance ramp and struck the second rear tandem wheel of Johns’ trailer. The car then moved backward away from the trailer and struck the interstate railing. Lampley stated he was approximately 1 to 3 truck lengths behind Johns. He testified that when the Giraud vehicle collided with the trailer rig, Lamp-ley, afraid the swerving car would collide with his truck, braked so suddenly that the chains on his load broke and a piling smashed through the cab. He ceased working for W.C. Fore Trucking shortly after the accident. No evidence was presented to show that he had maintained any business or social contact with Johns or the company.
John Ravoire, testified that he was driving directly behind Lampley at the time of the accident. Ravoire corroborated Johns’ and Lampley’s testimony. He stated that as Johns’ truck passed the entrance ramp, the Giraud vehicle entered the right lane of traffic, struck the rear wheels of the trailer rig, jerked backwards and struck the railing of the ramp. Ravoire testified that he was coming out of a curve in the interstate at the time of the accident and could clearly see the elevated portion of the interstate where the collision occurred. He was traveling approximately one and one-half truck lengths behind Lampley’s vehicle. Like Lampley, Ravoire was a disinterested, independent eyewitness. He ceased working for the trucking company in 1986 and was residing out of state at the time of the trial.
Elvira Giraud did not testify at trial nor was her deposition taken and introduced as evidence. The only eye witness to testify in her favor was her husband, Lewis Gi-raud. Mr. Giraud testified that his wife stopped their car at the top of the entrance ramp. He stated that while the car remained stopped he felt the car being pushed into the ramp railing. He testified that his wife was not in the right lane of traffic at the time of the impact.
Two accident reconstruction expert witnesses testified at trial. Ross Macklin testified for Mrs. Giraud. Raymond Burkhart testified for defendants. Their testimony was contradictory as to how the accident occurred.
Macklin theorized that the truck crossed into the fourth lane of traffic created by the entrance ramp and struck the Giraud vehicle. He based his theory on two four foot long scuff marks he observed on the entrance ramp. Macklin described these marks as “erasure marks” caused when the car’s tires cleaned the grime from the surface of the interstate as it was pushed into the railing. He stated these marks, located 30 to 40 feet from the start of the entrance ramp, were 7V2 feet apart and matched the tires of the Giraud vehicle. He opined that since these marks were 3 feet from the line dividing the entrance ramp from the right lane, and the car body was approximately 1½ feet wider than the wheel base, the point of impact was approximately 2 feet inside the entrance ramp.
Macklin’s testimony was completely contradicted by Burkhart. Burkhart provided three reasons why the scuff marks could not have been left by the Giraud vehicle. First, Macklin found the marks to be 7½ feet part, whereas the wheel base on a 1976 Ford is 6-6 ½ feet apart. Second, Burkhart testified that if the car was dragged sideways as described by Macklin, then there should have been four scuff marks one made by each tire as opposed to just two marks. Third, Burkhart testified that if he car had been pushed to the side as described by Macklin, then the offset towards the railing would not have occurred as noted by Macklin. Based on these observations, Burkhart testified that, in his opinion, the scuff marks seen by Macklin could not have been made by the Giraud vehicle.
The conflicting testimony of Burkhart and Macklin certainly presented a credibility call for the jury. Obviously, they chose to accept Burkhart’s reconstruction as to how the accident occurred. Even without Burkhart’s testimony it would not have been unreasonable for the jury to reject Macklin’s version of how the accident occurred. Officer Spiess testified that he had *935 not observed any marks on the road when he investigated the accident. Macklin testified that when he investigated the scene there was a lot of grime and debris on the roadway. He acknowledged on cross examination that he did observe other scuff marks in the center and emergency lanes of the highway near the accident location. His recollection that the marks were some 30 feet from the offset differed by 20 feet from Spiess’ testimony. He lost the only photographs he had of the scuff marks and was unable to recall the precise location of the Giraud vehicle after impact.
The entrance ramp lane of traffic proceeds some 300 feet before merging into the right traffic lane. It was an uncontro-verted fact at trial that Mrs. Giraud proceeded up the entrance ramp in order to enter into the interstate flow of traffic, a maneuver which required Mrs. Giraud to merge from the fourth or entrance ramp lane of traffic into the right interstate lane of traffic when safe to do so. The inference that in the process of doing so, Mrs. Giraud negligently entered Johns’ lane of traffic and struck the rear portion of the rig is clearly reasonable given the evidence and testimony presented at trial. No evidence was presented that would provide the jury with any reason why the Johns’ vehicle would deviate into the entrance ramp of traffic.
A review of the trial court’s reasons for judgment indicates that no reference was made as to which vehicle crossed into the other vehicle’s lane of traffic — the critical issue facing the jury. The trial court’s reasons for judgment were silent as to why, given the evidence and testimony presented at trial, the jury, as “reasonable men” could not have concluded in defendant’s favor. We can only conclude that the trial court rejected the testimony of all of defendant’s witnesses and evidence in favor of plaintiff. In so doing, the court improperly weighed evidence and passed on the credibility of witnesses whose testimony conflicted, substituting its opinion of credibility in plain violation of the standards set forth for granting a motion for judgment notwithstanding the verdict.
Applying the above cited law, we hold the trial judge erred in rendering a judgment N.O.V. The evidence presented does not strongly or overwhelmingly point to a conclusion that Johns was at fault in causing the accident. In fact, the evidence preponderates in Johns’ favor. Reasonable men could certainly have differed on the question of fault, and the jury could reasonably have found Johns not at fault.
MOTION FOR NEW TRIAL
Because the judgment appealed from does not conditionally grant or deny the alternative motion for a new trial, there is no statutorily authorized means to proceed in this court. La.C.C.Pro.Art. 1811(C)(1); Hardin v. Munchies Food Store, 510 So.2d 33 (La.App. 2nd Cir.1987).
Appeal or review lies only from a final judgment. Short v. Criminal Sheriffs Office, 407 So.2d 786 (La.App. 4th Cir.1981); La.C.C.Pro.Art. 2083.
For the foregoing reasons, we reverse the judgment N.O.V. and reinstate the jury verdict and the judgment of January 22, 1987 dismissing Mrs. Giraud’s suit with prejudice. We remand the case to the trial court for ruling on Mrs. Giraud’s motion for new trial. All costs of this appeal to be assessed against appellees.
REVERSED AND REMANDED.

. Subsequent to the rendering of the judgment by the trial court, Mrs. Giraud died. Her heirs were substituted as party plaintiffs pursuant to motion and order filed in this court.

. Mrs. Giraud was 76 years old at the time of the collision and had a history of osteoporosis.